OPINION OF THE COURT
Chief Judge Wachtler.
In this case, we consider whether the operator of a residential substance abuse facility that has been duly licensed by the State must nonetheless comply with applicable local zoning laws. Because we conclude that State oversight of the location and operation of substance abuse facilities pursuant to the Mental Hygiene Law does not preempt the operation of local zoning laws, the order of the Appellate Division should be reversed.
Daytop Village, Inc. and Daytop Village Foundation, Inc. (collectively Daytop), are not-for-profit corporations organized under the laws of New York. On February 2, 1990, Daytop submitted an application to the New York State Division of Substance Abuse Services (DSAS) for a certificate of approval to operate a residential substance abuse treatment program at 21 Mountainview Avenue in the Incorporated Village of Nyack, Rockland County. Daytop Village Foundation, Inc. is the owner of the premises, and Daytop Village, Inc. was prepared to operate the treatment facility.
*504 The proposed site, which had previously housed a hotel, was located within the Village’s C-2 commercial zone. The Nyack Zoning Code explicitly prohibited residential uses within the C-2 zone. Despite this apparent conflict, Daytop did not seek either a variance or a certificate of occupancy from the Village.
Upon receipt of Daytop’s application, DSAS conducted an evaluation of the proposed treatment facility. This evaluation included consideration of the adequacy of the physical plant, the location of the facility, and the different procedures and services that Daytop planned to put into place there. On June 28, 1990, Daytop’s application was partially approved, with final approval contingent upon the resolution of certain outstanding matters. DSAS and Daytop settled these matters in a memorandum of understanding dated July 26, 1990. DSAS issued Daytop the final certificate of approval four days later, on July 30, 1990.
Meanwhile, the Village of Nyack, by order to show cause dated July 20, 1990, sought a temporary injunction staying Daytop from operating the facility pending application for and receipt of a variance and a certificate of occupancy from the Village of Nyack. Daytop cross-moved for an order dismissing the complaint and vacating the temporary restraining order contained in the order to show cause. A hearing on the motion was held in Supreme Court, Rockland County, on July 27, 1990. The court granted Nyack’s motion for a preliminary injunction, denied Daytop’s cross motion for a dismissal of the complaint, and gave Daytop until September 27, 1990 to apply to Nyack for a variance and a certificate of occupancy.
Daytop appealed, and the Appellate Division reversed, with one Justice dissenting. The Appellate Division concluded that article 19 of the Mental Hygiene Law implemented a comprehensive State-wide policy for the treatment of substance abuse. The majority held that operation of the local zoning laws in this instance tended to thwart the implementation of articulated policy concerns by placing additional restrictions on rights granted by State law. Thus, citing the doctrines of inconsistency and preemption, the Appellate Division held that Daytop would not be required to comply with Nyack’s zoning laws in order to operate the treatment facility. Because we agree with the dissenting Justice that there is no inherent inconsistency and that the local zoning laws and the applicable State law can be harmonized, we now reverse.
*505 Section 7-700 of the Village Law and section 10 (6) of the Statute of Local Governments explicitly authorize villages to enact zoning laws. Additionally, section 10 (1) (ii) (a) (11) of the Municipal Home Rule Law gives counties, cities, towns and villages the power to enact local laws for the "protection and enhancement of [their] physical and visual environment,” while section 10 (1) (ii) (a) (12) grants these localities the power to pass laws for "[t]he government, protection, order, conduct, safety, health and well-being of persons or property therein.” Yet while local governments do possess broad authority to enact legislation that promotes the welfare of their citizens, it is well established that they cannot adopt laws that are inconsistent with the Constitution or with any general law of the State (see, NY Const, art IX, § 2 [c]; Municipal Home Rule Law § 10 [1] [i], [ii]; see also, Matter of Ardizzone v Elliott, 75 NY2d 150, 155; Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377). The question now before us is whether the Zoning Code of the Village of Nyack is inconsistent with, and consequently, must give way to, article 19 of the Mental Hygiene Law.
Where the State has demonstrated its intent to preempt an entire field and preclude any further local regulation, local law regulating the same subject matter is considered inconsistent and will not be given effect (see, e.g., Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97; People v Cook, 34 NY2d 100, 109). This finding of preemption is justified by the belief thát "[s]ueh laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns” (Jancyn Mfg. Corp. v County of Suffolk, supra, at 97; see also, New York State Club Assn. v City of New York, 69 NY2d 211, 217). The Legislature’s intent to so preempt a particular area can be inferred from a declaration of policy or from a comprehensive or detailed scheme in a given area (New York State Club Assn. v City of New York, supra; see also, Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105). "[T]hat the State and local laws touch upon the same area is insufficient to support a determination that the State has preempted the entire field of regulation in a given area,” however (Jancyn Mfg. Corp. v County of Suffolk, supra, at 99).
Daytop argues, and the Appellate Division agreed, that the comprehensiveness of the State’s efforts to deal with substance *506 abuse is evidence of the Legislature’s intent to preempt local oversight of the location of residential treatment facilities. Daytop contends that the Village, if permitted to enforce its zoning laws, will impose additional burdens that will stifle the operation of New York State’s general laws. This, according to Daytop, compels a finding that Nyack’s zoning laws are preempted by the Mental Hygiene Law.
Article 19 indeed represents a sweeping effort to address the myriad problems that have flowed from the scourge of substance abuse in this State. In section 19.01 (b), the Legislature explicitly stated that "it is the policy of the state to conduct coordinated research and to develop programs to further the prevention and early detection of * * * substance abuse and substance dependence and to develop a comprehensive system of services to serve the full range of needs of * * * substance abusers and substance dependent persons.” To that end, DSAS is charged with the responsibility for establishing procedures and setting standards for the approval of substance abuse programs (Mental Hygiene Law § 23.01). DSAS is also empowered to "cooperate with and assist local agencies and community service boards in the development and periodic review of local comprehensive plans and programs for substance abuse services and approve such plans and programs” (Mental Hygiene Law § 19.07 [b] [4]). As part of this approval process, DSAS must "inspect and approve or disapprove the facilities of and the services provided by substance abuse programs” (Mental Hygiene Law § 19.07 [b] [5]).
Detailed regulations, found in 14 NYCRR parts 1010 through 1030, set out the scope of the approval process and the factors that must be considered in reviewing an application. For example, DSAS must consider "the safety and adequacy of the physical plant for the program” (14 NYCRR 1010.4 [b] [1]), as well as "the suitability and adequacy of the program based on appropriate criteria for the conduct of substance abuse services” (14 NYCRR 1010.4 [b] [2]). There are detailed regulations setting out the physical specifications for each facility (see, e.g., 14 NYCRR 1030.1 [g]), screening and admission procedures (14 NYCRR 1030.1 [c], [d]), and the type of services that are to be provided (14 NYCRR 1030.1 [e]).
None of this, though, leads inexorably to the conclusion that the State’s commitment to fighting substance abuse preempts all local laws that may have an impact, however tangential, upon the siting of substance abuse facilities. We note first that *507 unlike the portion of the Mental Hygiene Law which regulates the siting of community residential facilities for the mentally disabled, article 19 does not expressly withdraw the zoning authority of local governments (see, Mental Hygiene Law § 41.34). Thus, our analysis necessarily revolves around whether there is implied preemption of the local zoning power. The Legislature’s use of the word "comprehensive” in describing the State’s policy toward substance abuse does not, in and of itself, resolve that question. The analysis is considerably more complex and must take into effect the interplay between State and local authority in this area. Both the State and the Village have important interests at stake in this controversy — the State in promoting its substance abuse policy, the Village in controlling its present shape and future growth. But these interests are not necessarily contradictory. While it is true that in this case there is unquestionably a potential for some conflict if a variance and certificate of occupancy, once applied for, are not granted, there will not be inconsistency in every case. State and local regulation of the placement of substance abuse facilities will not by their very nature produce conflict and inconsistency. Two separate levels of regulatory oversight can coexist. This, we believe, is one argument against a finding of preemption in this case.
Further, having examined the statute, the legislative history, and the applicable regulations, we simply cannot conclude that the Legislature intended the aspirational language of the declaration of policy to trump local efforts to regulate the location of facilities through the application of zoning laws. In fact, as noted by the Village on this appeal, the substance abuse programs set into motion by the language of the Mental Hygiene Law are largely cooperative in nature and look toward a joint effort by State and local officials to address the problems posed by substance abuse (see, e.g., Mental Hygiene Law § 19.07 [b] [4], [8]). In his memorandum approving a 1980 recodification of the Mental Hygiene Law, Governor Carey noted that "the legislation emphasizes the importance of community-based programs, whether residential or non-residential * * * [and] establishes procedures to facilitate the development of community-based treatment programs.” (1980 McKinney’s Session Laws of NY, at 1875.) Thus, despite the fact that final approval power rests with DSAS, the statute clearly contemplates that officials from all levels of government will come together in designing programs for the treatment of substance abuse.
*508 As we noted in People v Cook (supra) the test is not whether the local law prohibits conduct which is permitted by State law, because that test is much too broad (id., at 109; see also, New York State Club Assn. v City of New York, supra, at 221). Rather, as noted above, we look to whether the State has acted upon a subject, and whether "in so acting has evidenced a desire that its regulations should pre-empt the possibility of varying local regulations” (People v Cook, supra, at 109). While the State has expressed its recognition that substance abuse is a State-wide problem and has instituted a comprehensive policy for the treatment of this problem on both the State and local levels, we simply do not consider this sufficient to warrant a finding of preemption under the facts present in this case.
There is no showing here that the Village of Nyack has effectively tailored its zoning laws to block the placement of substance facilities within its borders; in fact, two drug treatment programs are already in place there — a drug counseling program for youths and an in-patient drug treatment center offered by the local hospital. The Village is simply demanding that placement of the facility conform with regulations that are well within the Village’s authority to impose (see, Matter of Ibero-American Action League v Palma, 47 AD2d 998). The Village has a legitimate, legally grounded interest in regulating development within its borders. Because we find that this interest is not preempted by State regulation of the licensing of substance abuse facilities, Daytop must apply for a variance and a certificate of occupancy and otherwise comply with the Village’s zoning process.
We have considered Daytop’s remaining arguments, and we find them to be without merit. Accordingly, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court, Rockland County, reinstated.
Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
Order reversed, etc.