*514 OPINION OF THE COURT
Bernard L. Reagan, J.
In a case of first impression, the court determines, inter alia, that General Municipal Law § 208-d does not completely preempt the right of a city police chief to promulgate internal rules and regulations relating to off-duty employment of police officers.
Plaintiff, Syracuse Police Benevolent Association, Inc. (hereinafter PBA), moves for summary relief against defendant, Thomas Young, as Mayor of the City of Syracuse, New York (hereinafter City). The PBA seeks judgment declaring null and void certain internal rules of the Syracuse Police Department relating to off-duty, secondary employment by City police officers.[1] In this regard, the PBA contends that the challenged rules are overbroad and invalid as being beyond the authority of the City to enact due to the alleged preemptive effect of General Municipal Law § 208-d,[2] which reads as follows:
"§ 208-d Extra work by members of a police force in cities
"Notwithstanding the provisions of any general, special or local law or any rule or regulation of any police department or commissioner or head thereof, any member of a police force of a city may engage in extra work for another employer outside his regular hours of duty for not exceeding twenty hours a week provided that such extra work does not interfere or conflict with his regular duties as a member of the force or his availability for emergency duty nor affect his physical condition to the extent that it impairs his ability to efficiently perform such duties and further provided that the type of employment shall first be approved by the appropriate police department or police commissioner.” (Added by L 1967, ch 812, § 1.)
Defendant City contends that the administrative rules were legally promulgated under the City Charter, article V, §5-1409 which authorizes the chief of police, with the Mayor’s approval, to enact and enforce "such reasonable rules, orders and regulations for the government, administration and disposition of the officers and members of the department of police *515 as may be necessary to carry out the functions of the department.” In this regard, the City contends that its local rules are designed to ensure compliance with the restrictions set forth in General Municipal Law § 208-d; that the statute does not prohibit the enactment of other restrictions; and that its local rules are consistent with the statutory right given to the chief of police to approve the type of off-duty employment of its police members.
A. General Municipal Law § 208-d Has Not Preempted Enactment Of All Municipal Regulations Concerning The Right Of Police Officers To Off-Duty Employment
(1) Preemption
In considering the PBA’s contention that General Municipal Law § 208-d has preempted any and all further local regulation of the right of police membership to off-duty employment, it is appropriate to first examine the preemption doctrine and then to consider the statute, its legislative history and the applicable regulations (see, Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505-508).
The Municipal Home Rule Law gives counties, cities, towns and villages the power to enact local laws in a wide range of matters relating to local concern, so long as that local legislation is not inconsistent with the State Constitution or with any general law of the State (see, NY Const, art IX, § 2 [c] [i]; Municipal Home Rule Law § 10 [1] [i]; Incorporated Vil. of Nyack v Daytop Vil, supra, at 505, and cases cited therein). The doctrine of preemption, however, represents a fundamental limitation upon the municipality’s home rule powers (see, Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377). If it is determined that the State has preempted an entire field or area of concern, a local law regulating the same subject matter is deemed inconsistent with the State’s overriding interest because it either: (1) prohibits conduct which the State law may consider acceptable, or at the least does not prohibit; or (2) it imposes additional restrictions on rights granted by State law (see, Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97).
Moreover, a local law may be ruled invalid as inconsistent with State law, not only where an express conflict exists between the statute and the local laws, but also where the State has clearly demonstrated its desire to preempt an entire field (Jancyn Mfg. Corp. v County of Suffolk, supra, at 97; see *516 also, Incorporated Vil. of Nyack v Daytop Vil., supra, at 505). The Legislature’s intent to preempt a field need not be expressly set forth in a statute, but may be inferred or implied from either a declaration of policy, or from a comprehensive or detailed regulatory scheme in a certain area (see, Matter of Ardizzone v Elliott, 75 NY2d 150, 155; Incorporated Vil. of Nyack v Daytop Vil., supra, at 505). The intent to preempt may also be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme (see, Albany Area Bldrs. Assn. v Town of Guilderland, supra, at 377).
Finally, the mere fact that both the State law and the local law may touch upon the same general area is insufficient in and of itself to support a determination that the State has preempted the entire field of regulation in a given area (see, Jancyn Mfg. Corp. v County of Suffolk, supra, at 99). The test is not whether or not the local law prohibits conduct which is permitted by State law, but whether or not the State has acted upon a subject and in so acting, has evidenced a desire that its regulation should preempt the possibility of varying local regulations (see, Incorporated Vil. of Nyack v Daytop Vil., supra, at 505; People v Cook, 34 NY2d 100, 109).
(2) General Municipal Law § 208-d — Legislative History
General Municipal Law § 208-d (L 1967, ch 812) became effective on May 2, 1967. In his memorandum to the Legislature upon enactment of the bill, Governor Rockefeller, inter alia, stated:
"The bill establishes for the first time on a Statewide basis the right of policemen to engage in outside employment subject to appropriate safeguards designed to assure adequate protection to the public.
"Under the provisions of this bill any local police officer will be able to engage in outside employment provided his outside work does not exceed twenty hours per week, does not conflict with his regular duties or his availability for emergencies, does not affect his physical condition and is a type of employment approved by the local police commissioner or police chief. At the present time, there is no State law establishing standards governing the outside employment of members of local police forces. * * *
"I am confident that the provisions of this bill can be successfully implemented to assure policemen the same oppor *517 tunities for outside employment now afforded most other public employees, while fully protecting the general public, which depends so greatly on the dedicated members of our local police forces for the safety.” (Governor’s Mem approving L 1967, ch 812; 1967 NY Legis Ann, at 300.)
An examination of the legislative history of General Municipal Law § 208-d reveals the primary motivating factor behind enactment of a State law allowing off-duty work to police officers of a city, to have been the inability of New York City police officers to pursue off-duty employment due to prohibition by local regulations (see generally, Governor’s Bill Jacket, L 1967, ch 812; 1967 NY Assembly Bill, Int 2526, Print No. 2542, 6857). As a matter of policy, off-duty police employment throughout the State was then generally left to local authorities, however, Internal Rule No. 47.0 of the Police Commissioner of the City of New York prevented any and all off-duty employment.
In 1966, a bill was introduced in the State Senate (Senate Int 766, Print No. 5154) which sought to amend the General Municipal Law to authorize, under certain conditions,[3] part-time employment by members of a police force. This proposed bill applied to any municipal police force. However, on August 4, 1966, then Governor Nelson Rockefeller vetoed the bill, noting that the authority to approve part-time employment was vested with local police departments and that this provided a flexible approach which was geared to the needs of the individual community. The Governor also noted that the effect of that bill would be to create a requirement State-wide that policemen be permitted to engage in part-time employment without regard to varying local needs and conditions (see, 1966 NY Legis Ann, at 393).
In 1967, a similar bill was introduced which, however, limited its application to cities only in New York State (see, Assembly Int 2526, Print No. 2542). Following legislative consideration and investigation, the bill was withdrawn and amended to provide two additional considerations to the right to off-duty employment, to wit: a provision restricting the *518 amount of off-duty hours to 20 a week, and one conditioning employment upon a police officer’s availability for emergency duty (see, Assembly Int 2526, Print No. 6857).
Opposition to the enactment of a statutory right to off-duty employment centered on objections that it violated the home rule provisions of the State Constitution (see, NY Const art IX; Municipal Home Rule Law § 10). Other concerns expressed doubts as to the statute’s impact upon the health, efficiency, integrity and professionalism of a police force. Moreover, concerns were raised as to possible conflicts of interest between the officer’s primary job and that of his civilian employment. The Temporary State Commission of Investigation expressed concern that the conditions were broad and general and might undermine the authority of local police officials to establish and enforce strict rules regulating outside employment. Other authorities and agencies opposing the enactment of such measure included the Citizen’s Union; the Office for Local Government; the New York State Police; the Office of the Budget; the Association of the Bar of the City of New York; the Office of the Mayor of the City of New York; the New York State Conference of Mayors; and the Police Commissioner of the City of New York.
The Legislature also considered favorable input from the Superior Officers Counsel of the New York State Police Department which approved of the bill, stating that its conditions were "eminently reasonable”, and would aid in increasing the officers’ income and police recruitment. The PBA of the City of New York stated that it was desirable to have a uniform State law with "reasonable guidelines” as were presented in the submitted bill. In this regard the PBA noted that the bill expressed an acceptable and desirable concept and, by its nature would permit reasonable regulations. Attorney-General, Louis J. Lefkowitz, at that time noted no legal objections to such an enactment and noted that the bill would assist police officers to supplement their income "despite local regulations, legislative or otherwise, prohibiting such extra work” (Bill Jacket, L 1967, ch 812). Finally, the New York State Association of Chiefs of Police, Inc. noted that the proposed law still maintained control of the type of employment with the individual police chiefs and such an enactment was necessary for some police departments who paid low wages.
Thus, in concept, the Legislature progressed from a 1966 proposal to allow off-duty employment to all police officers *519 throughout the State subject only to a few conditions, to an initial 1967 attempt to limit its applicability only to city police forces and then to the eventual bill which applied only to cities and included additional regulatory safeguards. Municipalities other than cities remain free to adopt their own policy with respect to police off-duty employment.
(3) Legislative Intent
Accordingly, it is abundantly clear only that the State, in acting on the subject of off-duty police employment, has evidenced its desire that General Municipal Law § 208-d preempt any local city regulations which outright prohibit off-duty employment by police officers. No city regulation which evinces a blanket prohibition against off-duty employment would be valid under this law.
Moreover, it becomes clear that the introductory clause of General Municipal Law § 208-d which reads: "Notwithstanding the provisions of any * * * local law or any rule or regulation of any police department * * * any member of a police force of a city may engage in extra work”, evinces the legislative intent to allow off-duty employment, subject only to the following conditions: (1) the off-duty work may not exceed 20 hours per week; (2) such extra work may not interfere or conflict with the officer’s regular duties; (3) the off-duty work may not interfere or conflict with the officer’s availability for emergency duty; (4) the off-duty work may not affect his physical condition to the extent it impairs his ability to efficiently perform his official duties; and (5) the type of employment must first be approved by the appropriate police chief.
With the exception of the 20-hours-per-week condition, all other provisions are broadly worded and compliance with same must initially be determined by the local department. There are no official State rules and regulations implemented to effect or to assist in the enforcement of the provisions of General Municipal Law § 208-d. Moreover, these five conditions/ criteria enunciated in the statute certainly do not comprise detailed regulations setting up the scope of the approval provisions and the multitude of factors that must be considered by the local authority as they relate to the expressed general conditions (see, Incorporated Vil. of Nyack v Daytop Vil., supra, at 506). Finally, nothing in the statute expressly precludes local government authority from enacting local *520 rules and regulations to effect the consideration based concerns expressed in the statute.
(4) Local Authority and Examination of the Local Regulations
The challenged City rules must be examined as well, to determine whether or not any or all of these rules are tailored to effectively contravene the State’s expressed interest in allowing off-duty employment to City police officers, subject to the contingency interests expressed.
Unless these local rules are in direct contravention of the State’s direct expressed policy with respect to the right of police to work off duty for a maximum of 20 hours, the broad conditions set forth in the remainder of the statute may, in this court’s opinion, be subject to local rules and regulations. This is so because of section 5-1409 of the Syracuse City Charter, derived from the Municipal Home Rule Law which allows the chief of police to "make, adopt, promulgate and enforce such reasonable rules, orders and regulations for the governing, discipline, administration and disposition of officers and membership of the department of police as may be necessary to carry out the functions of the department”. This of course is especially true with regard to so much of General Municipal Law § 208-d which gives the police chief final approval of the type of employment.
In light of the above discussion, plaintiff’s reliance upon the principle of statutory construction expressio unius, est exclusio alterius (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 240, at 411) is not controlling. In substance, this principle of construction relates that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded. Accordingly, where a statute creates certain provisions or exceptions as to certain matters, the inclusion of these provisions or exceptions is generally construed to deny the existence of others not so mentioned (McKinney’s Cons Law of NY, Book 1, Statutes § 240, at 411).
By this rule of construction, plaintiff contends that there may absolutely be no other conditions placed upon the off-duty right of employment of police officers other than those expressly stated in General Municipal Law § 208-d. However, this rule of construction is not an iron bound rule of law *521 excluding from the operation of a statute those things which are not so enumerated in every case. It is merely an aid to be utilized to ascertain the meaning of the statute when its language is ambiguous, and should be applied to accomplish the legislative intention, not to defeat it (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 240, at 411; see also, Price v Price, 69 NY2d 8, 16, n 3).
The intent of the Legislature to allow city police officers to work a maximum of 20 hours per week off duty and the right of the local police chief to approve the type of employment is manifest. The broadly written conditions further contained in the statute are themselves susceptible, however, to further specificity through the enactment of local administrative rules pertaining to them. This seems especially so wherein the statute was so obviously broadly drafted so as to allow a certain degree of flexibility with the needs and requirements of individual city police forces.
B. Validity Of The Local Rules
Having determined that the local authority is not precluded from adopting rules and regulations consistent with General Municipal Law § 208-d, the question then becomes whether or not the individually challenged rules are themselves legally inconsistent or irrational. In this regard, whereas here, the Legislature has delegated rule-making authority to a local police chief, and by statute has furnished the police chief with a broad outline within which to operate, those administrative regulations will be upheld only if they have a rational basis and are not unreasonable, arbitrary or capricious (see, New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166; Onondaga Landfill Sys. v Flacke, 81 AD2d 1022, 1023 [4th Dept 1981]).
One who challenges these rules has the burden to establish that the rule or regulation is so lacking in reason for its promulgation that it is essentially arbitrary, and this court may set a rule aside only upon the compelling showing that the calculations from which it is derived are unreasonable (see, New York State Assn. of Counties v Axelrod, supra). “It is not the judicial function to address * * * the 'policy considerations underlying the standard’ applied upon review” (supra, at 167).
Having examined General Municipal Law § 208-d, its legislative history and the perceived intent of the Legislature in enacting same, and the challenged rules of the City of Syra *522 cuse Police Department, the court makes the following determination and does,
Order, Adjudge, Declare and Decree that the following rules are void and vacated, as they have no rational basis, are arbitrary, capricious, unreasonable or are directly preempted by General Municipal Law § 208-d:
Rule 20.12 (H) — This rule purportedly allows the chief of police to deny secondary employment "when social status is such that there is no apparent need” (on the part of the applicant). This rule is in direct contravention with General Municipal Law § 208-d in that "need” or "social status” is not a criteria for allowing or denying the statutory right to off-duty employment subject to the conditions stated.
Rule 20.12 (M) — This rule attempts to prevent police officers and community service officers from off-duty employment during a probationary period, unless accompanied by a non-probationary officer. This rule unreasonably places an additional burden upon a potential employer which is not authorized by statute affecting the availability of off-duty jobs unless, of course, the department’s intent is to provide these supervisory police personnel free of charge to the employer. The statute makes no exceptions to the right to off-duty work for probationary officers who are full members of the police force. This unreasonable and arbitrary rule should be compared with rule 20.12 (L), which denies off-duty employment to police recruits attending the police academy basic course, i.e., who are not members of the police force, which the court does not find to be arbitrary, capricious or irrational (see below).
Rule 20.12 (N) — This rule prevents off-duty police officers of the rank of lieutenant and above from performing off-duty work consisting of functions normally performed by a police officer rank, e.g., guard duty, traffic police. This is a category preempted by the application of General Municipal Law § 208-d and one impermissibly, irrationally and arbitrarily based upon perceived dignity and status within the police department. The statute does not limit off-duty employment by rank or the social dignity of the job.
Rule 20.12 (Q) — This rule limits outside employment which requires more than three officers for a specific event unless there is a police supervisor also actually present. While the department may have a "rational” basis for requiring a supervisor to be present, such a requirement is preempted by General Municipal Law § 208-d and imposes an unwarranted *523 burden upon an employer seeking to hire an off-duty officer who has a specific right to work under the law independent of any such local rationale.
Rule 20.14 (A) — This rule, which by required form requires a police officer to certify that an adequate supply of labor for (the proposed off-duty work) is not available, is irrational, arbitrary and capricious and improperly places a burden under the statute upon the police officer in obtaining legitimate off-duty employment within the permissible parameters of the conditions set forth in the statute. Other than this one impermissible requirement/certification, the court finds no other objections to rule 20.14 (A).
The court has examined the other challenged rules and does
Order, Adjudge, Declare and Decree that the following rules of the City of Syracuse Police Department are rational; are reasonable; are not arbitrary or capricious; are not preempted by the application of General Municipal Law § 208-d, and finally, are legitimately related to the express conditions set forth in the statute and serve merely as supplemental enforcement procedures directly related to the purpose of the statute: rule 20.12 (A) (4); rule 20.12 (L); rule 20.13 (C) (3) as interpreted by the department; rule 20.14 (A) with the exception of certification number two as indicated above; rule 20.14 (B), (D) as interpreted by the department; rule 20.15 (A), (C), (D); rule 20.17 (A), (C).
APPENDIX A
"20.00 Policy — Secondary Employment
"20.01 Secondary employment will be permitted subject to the provisions of law, ordinance and departmental policies, procedures and rules.
"20.02 Secondary employment of employees will be controlled to establish and maintain professional standards which insure that the ideals and ethics of law enforcement are not compromised.
"20.03 All employees who desire to engage in secondary employment must recognize that their primary duty, obligation and responsibility is to the Department. Employees are subject to call at any time for emergencies, special assignments or extra duty, and no secondary employment may infringe on this obligation.
"20.04 No employee may engage in other employment, including self employment, during the hours which constitute *524 duty hours or outside such hours to the extent that such extra work affects or is deemed likely to affect his/her usefulness as an employee of the Department * * *
"20.10 PROCEDURE
"20.11 Definition of Secondary Employment
"Secondary employment shall be defined as all outside employment, including self employment, and Police Department volunteer overtime details (i.e. STOP DWI, Parks Detail).
"20.12 Conditions Relating to Secondary Employment
"A. Employees must abide by applicable statutes, including the following * * *
"4. All officers engaging in secondary employment shall insure that their secondary employer is made aware of the above provisions * * *
"H. Employees may be denied secondary employment approval when social status is such that there is no apparent need. Applicants must be prepared to present evidence or data indicating a need for same * * *
"L. Employees attending the police academy basic recruit course shall not engage in secondary employment.
"M. Police officers and community service officers shall not engage in secondary employment of a police type roll or capacity while on the probationary period following being hired, except when working directly with an experienced officer who is not on probation.
"N. Lieutenants and above shall not engage in secondary employment when the duties of such secondary employment consist of performing functions normally performed by the police officer rank. Examples of such prohibited employment include, but are not limited to: guard duty, direction of traffic and store security * * *
"Q. Any outside employment that requires more than three officers for a specific event will have a supervisor actually present.
"20.13 Long Term and Temporary Secondary Employment * * *
"C. The Personnel Division shall maintain a list of employees desiring to engage in secondary employment * * *
"3. If an employer requests the services of a particular employee, such request may preclude the canvassing of the list of available employees.
*525 "20.14 Secondary Employment Request Procedure
"A. Employees who desire to engage in secondary employment shall submit a Secondary Employment Request/Permit (Form 9.3a), in triplicate, to their respective command officers.
"1. The information required on the Form 9.3a (excluding signature) shall be typed.
"2. Signatures are to be legible on all copies.
"3. Employment cannot begin until the request has been approved by the Chief of Police, or Bureau Deputy Chief.
"4. The submitting employee will sign the request after it has been completed by the employer. This signature acknowledges that the employee understands all provisions related to secondary employment and that the employee has read the reverse side of Form 9.3a and authorizes the Chief of Police or his designee to examine secondary employment records.
"5. The submitting employee will list any other secondary employment before submitting the request to his/her command officer for approval.
"B. Command officers will review the requesting employee’s medical leave. The medical leave information included on the secondary employment request/permit will assist command officers in identifying when additional examination of medical leave usage is warranted. Performance with the Department will also be considered. Command officers will have a thorough understanding of the type of secondary employment being considered before recommending approval or disapproval of the request.
"1. The command officer shall recommend either approval or disapproval of the secondary employment request/permit and include on a 10.1 any suggested stipulations.
"2. If the command officer recommends disapproval, an Inter-Department-Memo (form 10.1) indicating the reason for such disapproval shall be attached * * *
"D. The Chief of Police or respective Bureau Deputy Chief will approve or disapprove the request/permit and may add certain conditions or stipulations relating to the employment.
"20.15 Renewal or Cancellation of Secondary Employment
"A. Approved secondary employment permits will be valid for a period of six months and only for the employment specified in the originally approved request * * *
"C. Secondary employment permits are valid for six months *526 and must be renewed if the employee wishes to continue such employment beyond the six month time period.
”1. The procedure for renewal is the same as for obtaining an original permit (Section 20.13), except that Form 9.3a will indicate 'renewal’ rather than 'original’.
"2. Requests for renewal must be made at least ten days prior to the expiration of the original request and must be approved before such secondary employment continues past the existing permit’s expiration date.
"D. Approved secondary employment requests may be can-celled at any time for cause by the: Chief of Police, the employee’s bureau deputy chief or command officer. If a Secondary Employment Permit is so cancelled, the Personnel Division will be notified immediately * * *
"20.17 Prohibitions while on Medical Leave or Limited Duty
"A. Employees shall not be permitted to engage in any form of secondary employment while on medical leave (sick, injured on, or injured off duty) or while assigned to limited duty, even though an approved Secondary Employment Permit may be in effect at the time. Employees on Workman’s Compensation are on medical leave * * *
"C. Any previously approved request for secondary employment will be automatically suspended during the term or any extended medical, including workman’s compensation, or assignment to limited duty.”

. The challenged internal rules appear in full in Appendix A attached.

. The General Municipal Law has three sections 208-d. The above section is substantially duplicated in a version entitled "Extra work by members of certain police forces” and applies to the police force of a housing authority of any municipality (L 1967, ch 736, § 1). An unrelated section 208-d is entitled "Compensation during disability”.

. This bill contained no provision limiting the amount of off-duty hours worked, and conditioned the work only as follows: "provided that such extra work does not interfere or conflict with his regular duties as a member of the police force nor affect his physical condition to the extent it impairs his ability to efficiently perform such duties, and further provided that the type of employment shall first be approved by the appropriate * * * police commissioner”.