*916 OPINION OF THE COURT
Robert G. Bogle, J.
A trial by stipulated facts was held before this court on January 8, 1997. This matter is determined as follows.
The defendant, Debbie Nicosia, is operating a business under the name Debbie’s Day Care Center located at 40 Fairmont Street in the Incorporated Village of Valley Stream, Nassau County, New York.
The defendant was originally charged under section 99-2001 of the Village Code, but a superseding information and affidavit were filed with the court charging violation of the New York State Uniform Fire Prevention and Building Code Act. (See, Executive Law § 370 et seq.) Under this State Code, the defendant has been charged with occupying a "cellar” which by law may not be utilized as "habitable space”. (9 NYCRR 606.3 [a] [30]; 711.1 [b].) Furthermore, the swing of the door opening onto the stairway improperly overlaps the top step. (9 NYCRR 713.1 [g].) The minimum headroom of the staircase is only five feet nine inches, in violation of the State requirement of six feet four inches for cellars, basements and attics (9 NYCRR 1233.4 [a] [4] [ii]); and the stairway handrail and railings are in violation of the State height requirements. (9 NYCRR 713.1 [f] [4].)
The defendant’s day care center is operated in the heart of a residential neighborhood in the finished cellar of a one-family home. It has been licensed by the New York State Department of Social Services as a "group family day care home”, with a maximum capacity of 12 children, ages 6 weeks to 12 years. (See generally, Social Services Law § 390; 18 NYCRR part 416.) The children are at the location from the early morning until the late evening. They are almost exclusively situated in the cellar, and when weather permits, in the backyard.
In issuing the license, it is noted that the New York State Department of Social Services must have determined the premises to be a "basement” and not a "cellar”. A basement is by definition "habitable space” which can be used for a full range of activities not permitted in the "nonhabitable space” which constitutes a cellar. (9 NYCRR 606.3 [a] [19], [30], [95], [143]; 711.1 [b].) The Village disputes the Department’s assessment. An inspection by the Village fire inspectors has determined that the space in question is four inches to six inches below average finished grade, making the total height of the space more than four feet below the average grade. Moreover, *917 the total space is more than 50% below grade. These facts have been stipulated to by the parties.
A "cellar” is defined as space which has more than half of its height below the average established curb level or finished grade of the ground adjoining the building. (9 NYCRR 606.3 [a] [30].) A cellar cannot normally be determined to be "habitable space”. (9 NYCRR 711.1 [b].) Furthermore, where the floor level is more than four feet below the average adjoining finished grade, the area cannot be deemed to constitute "habitable space”. (9 NYCRR 711.1 [b].)
Therefore, based upon the stipulated facts and an evaluation of the current State laws, it is clear the space in issue here is a cellar and not a basement. To the extent that the licensing determination by the Department of Social Services may have been based upon a finding that this space was a basement and not a cellar, it was incorrect as a matter of law and fact; to that extent, the approval by the Department of Social Services that the area might properly be utilized as "habitable space” must have been based upon an evaluation error. (Cf., Social Services Law § 390 [2] [d] [i].)
There is no question the cellar space at issue here is currently in use as a habitable area. "Habitable space” is defined as space occupied by one or more persons for living, sleeping, eating, or cooking. (9 NYCRR 606.3 [a] [95].) The 12 children enrolled in the defendant’s day care program use the premises for eating, sleeping, and playing; for many hours during the day, it is the children’s living quarters.
The defendant does not dispute the alleged violations, but instead has moved to dismiss the entire matter on the ground that the Village is preempted once the State has entered and regulated the premises. The Village opposes the defendant’s position and argues the Village has not thereby been precluded from enforcing other State laws, specifically the State Uniform Fire Prevention and Building Code Act. (Executive Law § 370 et seq.)
Preemption of local authority may occur when either the State or Federal Government expressly or by implication removes to itself control, regulation and supervision of an issue of local concern, usually by the enactment of a particular statute. (Guice v Schwab & Co., 89 NY2d 31 [1996].) The State Legislature may preempt local law by a declaration of State policy or an enactment of a comprehensive and detailed regulatory scheme in a particular area. (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91 [1987].) The defendant asserts that such *918 an intent to preempt is set forth in Social Services Law § 390 (12) (a), which reads in part that "no [local municipality] shall * * * enact any law * * * [to] enforce standards for sanitation, health, fire safety or building construction on a one or two family [house] * * * used to provide group family day care * * * [that would not] be applicable were such child day care not provided on the premises.” Based upon that section, coupled with the over-all legislative purpose of providing nearby day care to local residents, it is clear a locality could not enforce a requirement for a special local permit, where one would normally not be required for other one-or two-family dwellings. (People v Bacon, 133 Misc 2d 771, 777 [Nassau Dist Ct 1986].)
However, while the Village may not enforce certain Village Code regulations, there appears to be no prohibition against the local enforcement of other State regulations. (Village of Hempstead v Roman Catholic Church of Our Lady of Loretto, 198 AD2d 409, 410 [2d Dept 1993]; see also, Executive Law § 381 [2].) Under Social Services Law § 390 (12) (a), the statute reads that nothing therein will preclude "local authorities with enforcement jurisdiction of the applicable sanitation, health, fire safety or building construction code from making appropriate inspections to assure compliance with such standards.” Section 390 (12) (a) also indicates that child day care centers are subject to the same rules and regulations applicable to all one- and two-family dwellings. Therefore, the defendant’s group family day care home, as with all one- and two-family dwellings in the Village, must comply with the general State Uniform Fire Prevention and Building Code Act, including its prohibition against using a cellar as a place of habitation. Enforcement of that Code resides with local authorities and is not preempted by the provisions of the Social Services Law. (See generally, Executive Law § 381 [2]; Social Services Law § 390 [12] [a]; Village of Hempstead v Roman Catholic Church of Our Lady of Loretto, supra, at 410.)
The Social Services Law was not enacted to obstruct State fire safety rules and regulations. Fire safety standards are met "by allowing an applicant to satisfy the criteria otherwise applicable to all residences generally”. (People v Town of Clarkstown, 160 AD2d 17, 24 [2d Dept 1990].) As the Court of Appeals recently stated, "State and local regu!ation[s] will not by their very nature produce conflict and inconsistency. Two separate levels of regulatory oversight can coexist.” (Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 507 [1991].)
*919 Based upon the foregoing analysis of case law and statute, it is clear that the Legislature never intended to preempt enforcement of the State’s uniform fire prevention and safety regulations by enacting section 390 of the Social Services Law. (People v Town of Clarkstown, supra, at 24; see, Executive Law § 371.) It is equally clear that the Department of Social Services was incorrect to the extent that it determined the space in issue here to be a basement when it is in actuality a cellar. Had the Department properly determined the space to be a cellar in the first instance, their granting a license to use the area as "habitable space” for day care purposes might have resulted in a different conclusion here. (Cf., Social Services Law § 390 [12] [b]; 18 NYCRR 416.18 [r].) Therefore, the defendant is in violation of utilizing these premises as "habitable space”, a prohibited use, and is in violation of 9 NYCRR 711.1 (b); 713.1 (g); (f) (4) and 1233.4 (a) (4) (ii) of the rules and regulations as promulgated pursuant to the New York State Uniform Fire Prevention and Building Code Act.
The court is well aware of the need for quality day care to meet the demands of our modern society. (See generally, People v Town of Clarkstown, supra, at 22-23.) However, it is paramount to the concerns of public policy that the protection and safety of our children must neither be sacrificed nor compromised to achieve this otherwise laudable social objective.
In enacting the New York State Uniform Fire Prevention and Building Code Act, the Legislature found that the "level of loss of life, injury to persons, and damage to property as a result of fire demonstrates that the people of the state ha[d] yet to receive the basic level of protection to which they are entitled” and that the "system of enforcement of fire protection and building construction codes” was at best inconsistent and inadequate. (Executive Law § 371 [1] [a], [c].) The Legislature therefore declared it to be the public policy of the State of New York, through the enactment of the Uniform Fire Prevention and Building Code Act, to "[immediately provide for a minimum level of protection from the hazards of fire in every part of the state” and to "[e]ncourage local governments to exercise their full powers to administer and enforce the uniform code” (Executive Law § 371 [2] [a], [d] [emphasis supplied]). That is precisely what the Village’s enforcement officials are doing here. (Cf., Village of Hempstead v Roman Catholic Church of Our Lady of Loretto, supra, 198 AD2d, at 411.) It is this court’s duty and obligation to uphold those enforcement *920 efforts in all proper cases, and to adjudge violations where the evidence sufficiently demonstrates them to exist, the laud-ability of any countervailing social objective notwithstanding.