*153 OPINION OF THE COURT
Michael D. Stallman, J.
In this action for injunctive and declaratory relief, plaintiffs challenge the validity of Local Law No. 36 (2002) of City of New York (codified in Administrative Code of City of NY § 6-128).[1]
Facts
Local Law No. 36 prohibits the City of New York from providing financial assistance to, contracting for goods or services with, or depositing City funds in, any financial institution (or affiliate) that issues, purchases, or invests in a minimum number of certain loans, which it defines as “predatory”: high-cost home loans, with an annual percentage rate, or points and fees, that exceed certain thresholds; ones made without sufficient investigation of the borrower’s ability to pay; ones that result from loan flipping,[2] or include balloon payments, discretionary call provisions, negative amortization, interest rate increases upon default, oppressive, unfair, or unconscionable arbitration clauses, certain modification or deferral fees, certain prepayment penalties, excessive financing of points or fees, or payments to home improvement contractors by the lender; or those that result from fraud or federal Truth in Lending Act violations. (Administrative Code § 6-128 [a] [16].)
Local Law No. 36 requires a financial institution to certify, as a condition of doing business with the City, that neither it, nor any affiliate,[3] is or will become a predatory lender. A financial institution could avert predatory lender designation by entering a discontinuance plan with the City Comptroller. If the City does business with an entity and thereafter deems it predatory, the City could impose various penalties. The lender and any affiliate would be barred from City business for three years.
The Mayor (motion sequence No. 01) and intervenor (motion sequence No. 03) moved for a preliminary injunction against *154 Local Law No. 36 pending final determination. On consent, the court converted those motions to motions for summary judgment.[4]
Plaintiffs contend that federal and state laws preempt Local Law No. 36. The Mayor contends that Local Law No. 36 improperly reallocates mayoral powers without a referendum, and impermissibly limits executive authority to contract for City goods and services. Defendants contend that Local Law No. 36 is valid, and that, if any part is not, the remainder should be severed and enforced.
I
The court must first determine if Local Law No. 36 is regulatory or proprietary. Inconsistency or overlap with federal or state law is more likely to cause preemption if a law is regulatory.
A law is regulatory if it seeks to control conduct. (Wisconsin Dept. of Indus., Labor & Human Relations v Gould Inc., 475 US 282, 289 [1986].) A law is proprietary if it manages a governmental entity’s relationships with vendors or other contractors, and advances the entity’s private or proprietary interests in its own affairs. (Building & Constr. Trades Council of Metro. Dist. v Associated Bldrs. & Contrs. of Mass./R.I., Inc., 507 US 218, 228-233 [1993].)
In Gould, the United States Supreme Court reviewed a Wisconsin law that debarred governmental entities from doing business with companies that had violated the National Labor Relations Act three times within five years. The United States Supreme Court found it regulatory and held that it was preempted by federal law. “[D]ebarment. . . serves plainly as a means of enforcing the NLRA.” (Gould, 475 US at 287.) The Supreme Court noted that “the point of the statute is to deter labor law violations” and that “[n]o other purpose could credibly be ascribed.” (Id. at 287.)
In Building & Constr. Trades Council (supra), the United States Supreme Court explained:
*155 “When the State acts as regulator, it performs a role that is characteristically a governmental rather than a private role, boycotts notwithstanding. Moreover, as regulator of private conduct, the State is more powerful than private parties. These distinctions are far less significant when the State acts as a market participant with no interest in setting policy.” (507 US at 229.)
The City Council explains its interest as economic. Its legislative findings (Local Law No. 36 § 1, reprinted following Administrative Code § 6-128) declare that predatory lenders siphon resources from communities, thereby decreasing sales and property tax revenues and requiring the City to assist victimized borrowers. Defendants, however, have not demonstrated that the City, rather than individual borrowers, would benefit financially from the City’s refusal to deal with each institution affected by Local Law No. 36. For example, defendants have not shown that such lenders or their affiliates are more likely to breach City contracts or charge the City higher rates or fees. Defendants’ speculation about the indirect public effect of predatory lending does not consider the administrative cost of investigating lenders and enforcing Local Law No. 36, or any pass-along to the City and consumers of financial institution expenses.
Local Law No. 36 sets policy. It establishes a detailed scheme applicable to all financial institutions as a condition of doing business with the City. In contrast, the limited specifications upheld in Building & Constr. Trades Council applied only to one project, the Boston Harbor cleanup.
Defendants contend that Local Law No. 36 is proprietary, because Local Law No. 36 influences the City’s relationship with its vendors, but does not regulate mortgage lending, and because predatory lenders are not responsible bidders.
Defendants have not demonstrated that Local Law No. 36-defined entities, or their affiliates, are uniformly less financially responsible than non-high-cost lenders, subprime[5] or otherwise. It does not appear that such consideration motivated enactment of Local Law No. 36.
This case is not about the City’s undisputed proprietary capacity, rationally exercised, to decline to do business with a *156 potential contractor. The City may examine, inter alia, the financial responsibility and integrity of anyone it considers for a business relationship. A contracting authority may require a contractor to certify compliance with applicable law. (See Matter of Positive Transp. v City of N.Y. Dept. of Transp., 183 AD2d 660 [1st Dept 1992] [certification that no employees have criminal convictions].) Upon a reasonable investigation, the City may conclude that an entity is not responsible and may reject it. (See Matter of Lauvas v Town of Bovina, 86 AD2d 694 [3d Dept 1982].) The City need not do business with lawbreakers, e.g., financial institutions that violate the federal and state banking laws discussed infra. Rather, by establishing a detailed, comprehensive, independent code of lender, conduct, Local Law No. 36 made the City a regulator.
II
Federal law preempts state or local law in three ways: express preemption language in a federal statute; pervasive federal regulation occupying the field, leaving no room for state or local legislation; or irreconcilable conflict with the federal statutory scheme. (Rice v Norman Williams Co., 458 US 654, 659 [1982]; Jones v Rath Packing Co., 430 US 519, 525, 530-531 [1977].)
A.
The Home Owners Loan Act (HOLA) regulates all federal savings associations. (12 USC § 1463 [a]; § 1464 [a].)[6] The Office of Thrift Supervision (OTS) implements HOLA by promulgating uniform national regulations. OTS regulations have the same preemptive effect as federal statutes. (Fidelity Fed. Sav. & Loan Assn. v de la Cuesta, 458 US 141, 153 [1982].) OTS regulations expressly preempt many matters addressed by Local Law No. 36.[7]
*157 OTS has indicated that federal regulators need not feel bound by existing state law; federal savings associations and their operating subsidiaries are entitled “to extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities.” (Fidelity Fed. Sav. & Loan Assn., 458 US at 153-154, 162.)
HOLA and OTS regulation is so pervasive that there is no room for state or local regulation. (Hines v Davidowitz, 312 US 52, 67 [1941]; Conference of Fed. Sav. & Loan Assns. v Stein, 604 F2d 1256, 1260 [9th Cir 1979], affd 445 US 921 [1980].) This constitutes field preemption. As to federal savings associations, HOLA preempts Local Law No. 36 in its entirety.
B.
The National Bank Act (NBA) applies to all nationally chartered banks. The Office of the Comptroller of the Currency (OCC) has regulatory, supervisory, and enforcement authority over national banks, including home mortgage lending services. (12 USC § 1 et seq.) OCC specifically addresses, by regulation, the extent to which 12 USC § 371 preempts state and local law.
NBA’s preemption is absolute in five areas: (1) amount of the loan in relation to the appraised value of the real estate; (2) schedule for repayment of principal and interest; (3) term to maturity; (4) aggregate amount that may be loaned upon the security of real estate; and (5) covenants and restrictions required in a lease to qualify the leasehold as acceptable security for a real estate loan. (12 CFR 34.4.)
To the extent that Local Law No. 36 would limit a national bank’s scheduling of repayment of principal or interest (12 CFR 34.4 [a]), its ability to deal in adjustable rate mortgage loans and interest (12 CFR 34.21), or imposition of noninterest charges and fees (12 CFR 7.4002), the NBA would preempt it. Similarly, the NBA preempts restriction of interest rates. Banks may charge the highest rate of interest allowed by the state in which they are located, irrespective of local law to the contrary. (12 USC § 85; 12 CFR 7.4002; Smiley v Citibank [S.D.], 517 US 735 [1996]; Marquette Natl. Bank of Minneapolis v First of Omaha Serv. Corp., 439 US 299, 313 [1978].) To hold otherwise *158 would permit the local law to “stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress” in enacting 12 USC § 371. (Barnett Bank of Marion County, N.A. v Nelson, 517 US 25, 31 [1996] [internal quotation marks omitted].)
No national bank may be subjected to visitorial powers except as authorized by federal law. (12 USC § 484 [a]; § 1813 [g].) Visitorial powers include examination of a bank’s books and records. (12 CFR 7.4000 [a].) Federal law thus prevents local regulatory access to national bank records. Activities that the NBA expressly permits, with respect to which it preempts state or local laws, cannot be used as a basis for categorizing a national bank as a predatory lender under Local Law No. 36. In sum, Local Law No. 36 may not be enforced against national banks.
C.
The Depositary Institutions Deregulation and Monetary Control Act (DIDMCA), which applies to federally- and state-chartered lenders, expressly preempts local laws that restrict interest rates, points, and fees for “federally related” first-lien home loans. (12 USC § 1735f-7a.) DIDMCA defines “federally related” to include the vast majority of home loans, including any loan made by a lender insured or regulated by a federal agency, or that makes real estate loans aggregating more than $1 million per year. (12 USC § 1735f-7a [a] [1] [C] [iii]; § 1735f-5 [b].) DIDMCA permits states to opt out of certain portions of the law, but New York did not opt out of the statute’s preemptive force.
DIDMCA neither affects second and junior mortgage loans, nor preempts state laws that regulate the charging or calculation of interest, if those laws do not place an express ceiling on rates or fees. (Grunbeck v Dime Sav. Bank, 74 F3d 331 [1st Cir 1996].)
DIDMCA provides:
“The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance . . . [with respect to loans covered by the act].” (12 USC § 1735f-7a [a] [1] [emphasis added].)
*159 Local Law No. 36 prohibits financial institutions from charging higher rates than those it authorizes, and expressly limits interest rates and fees, as conditions of eligibility to do business with the City. Given Local Law No. 36’s regulatory structure and effect, its avowedly persuasive purpose of controlling interest rates and fees, and the City’s enormous economic power as a contracting party and policy maker, Local Law No. 36 constitutes an “express limitation” as understood by DIDMCA. DID-MCA preempts Local Law No. 36 to the extent that Local Law No. 36 affects first mortgages on residential property designed to house one to four families, by any lender insured or regulated by a federal agency or that makes real estate loans aggregating more than $1 million per year.
Ill
New York law recognizes three grounds for state preemption of local law, which roughly parallel the categories of federal preemption: express preemption, field preemption and conflict preemption. (See Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 105 [1983].)
The State Constitution empowers municipalities to make local laws “not inconsistent with the provisions of this constitution or any general law.” (NY Const, art IX, § 2 [c] [i] [Home Rule Clause].) When the Legislature acts on matters of state concern, it thereby preempts local laws. (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372 [1989].)
Direct conflict between state and local law is not the only basis for state preemption. A local law is deemed inconsistent and preempted if it imposes additional restrictions on activity permitted under state law, because those restrictions inhibit the operation of the state’s general law. (Id.; see New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987].) If the local law intrudes into an area covered by the state regulatory scheme, even minor local variations are invalid. (Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs, 141 AD2d 468 [1st Dept 1988], affd 74 NY2d 761 [1989]; see New York City Health & Hosps. Corp. v Council of City of N.Y., 303 AD2d 69 [1st Dept 2003].)
A.
The state Banking Law provides for “uniform regulation of the residential mortgage lending process.” (Banking Law § 589.) The Banking Law contains detailed licensing and *160 registration provisions for mortgage lenders, penalties for certain prohibited mortgage-related practices, and a requirement that lending institutions provide mortgage loans only “in conformity with the [applicable provisions of the Banking Law].” (Banking Law § 6-i.) In short, the Banking Law contains a comprehensive regulatory scheme which evidences the state’s intent to occupy the field. (Matter of Ardizzone v Elliott, 75 NY2d 150 [1989]; Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372 [1989].)
In 2002, shortly after the Mayor vetoed Local Law No. 36, the State enacted a comprehensive law to regulate “high-cost” home loans. (L 2002, ch 626, § 1, codified in Banking Law § 6-1.) Chapter 626 inter alia prohibits certain acts and practices[8]
[9]by lenders and affiliates.® Although it uses different definitions, chapter 626 concerns the same activity deemed “predatory” by Local Law No. 36.
Local Law No. 36 has a broader reach than chapter 626. Local Law No. 36 seeks to regulate the conduct of persons and entities other than the original lender and its assignees regulated by state law; it authorizes different sanctions than those specified by the state law; and it creates an enforcement mechanism, via the City Comptroller and City agencies, beyond that provided by state law. Local Law No. 36 also sets subjective, difficult to apply, litigation-prone tests in addition to objective, bright-line standards. For example, Local Law No. 36 requires a lender to have a “reasonable belief” of the borrower’s ability to repay, *161 and. the borrower must receive a “reasonable and tangible benefit.” (Administrative Code § 6-128 [a] [16] [a], [b].)
The Banking Law’s express prescription of statewide uniformity, and chapter 626’s comprehensive and detailed regulatory scheme, preempt Local Law No. 36’s regulation of home mortgage lending by entities subject to state control. Given the State’s manifest intent to occupy the field, it was unnecessary to include specific language of express preemption. It is immaterial that the Legislature did not pass another bill (2002 NY Senate Bill S 7840) that included such express language and a provision barring the State or a subdivision from doing business with violators. “Legislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences.” (Bourquin v Cuomo, 85 NY2d 781, 787-788 [1995] [internal quotation marks and citations omitted].)[10]
Vatore v Commissioner of Consumer Affairs (83 NY2d 645, 651 [1994]) and Jancyn Mfg. Corp. v Suffolk County (71 NY2d 91 [1987]) are inapposite. In Vatore, the Court of Appeals held that state law did not preempt a local law that limited the location of cigarette vending machines. The Court found no legislative intent for uniform state control of vending machines. The state statute was not so broad and detailed to support field preemption. Moreover, a narrow express preemption provision concerning free cigarette distribution evidenced intent not to preempt the entire field.
In Jancyn, the Court of Appeals found no preemption of a local ordinance that governed cesspool additives. The Court found no express preemption language, no intent for state uniformity or exclusivity and no conflict with, or inhibition of, the State’s general law. The ordinance was limited to certain chemicals and their pollution of the Long Island water supply. The state Department of Environmental Conservation considered it compatible and not preempted.
Unlike Vatore and Jancyn, this case concerns a comprehensive local law in substantial conflict with a comprehensive state law. Local Law No. 36 and chapter 626 differently define unaceept *162 able loan terms and practices. They differ as to specific levels of permissible rates (e.g., interest rates on first mortgages, points and fees). They differently balance limitation of high-cost loans while permitting subprime lending. Moreover, by including subjective standards rather than the objective standards of state law, by extending restrictions to subsequent purchasers of home loans and by its counseling provisions, Local Law No. 36 would disrupt the operation of state law.
State preemption law recognizes an exception for á local law of general application “tangential” to the state law. (See Village of Nyack v Daytop Vil., 78 NY2d 500, 506 [1991]; New York City Health & Hosps. Corp. v Council of City of N.Y., 303 AD2d 69 [2003], supra.) Local Law No. 36 addresses virtually the identical activity regulated by chapter 626; it cannot be characterized as tangential. Despite its breadth, Local Law No. 36 is not a law of general application. The Banking Law preempts Local Law No. 36 in its entirety.
B.
The City provides various types of financial assistance which state laws authorize “as of right.” Local Law No. 36 prohibits City financial assistance[11] to institutions it defines as predatory lenders, or their affiliates. “Financial assistance” in Local Law No. 36 “include[s], but [is not] limited to, tax abatements . . . cash payments or grants.” (Administrative Code § 6-128 [b] [4].) Local Law No. 36 does not exclude tax exemptions. The ordinary meaning of “financial assistance,” its context, and the express intent of Local Law No. 36, embrace a tax exemption. Thus, City-granted as of right tax exemptions under state Real Property Tax Law § 489-aaa et seq. are financial assistance under Local Law No. 36; so too, are local tax credits when state law mandates “as of right” eligibility. (See e.g. General City Law §§ 25-y, 25-z.) By conditioning such assistance on conformity with Local Law No. 36, the City impermissibly altered the state’s eligibility standards. State law preempts Local Law No. 36 to the extent of that conflict.
Conclusion
State law, particularly the Banking Law and chapter 626, preempts Local Law No. 36 in its entirety. Federal law substan *163 tially preempts Local Law No. 36 as to entities and transactions governed by federal law.[12] The motions for summary judgment (motion sequences 01 and 03) are granted. It is ordered, adjudged and declared that Local Law No. 36 of 2002 is invalid; and defendants, all other City officers, employees and agencies, are permanently enjoined from enforcing it.

. The City Council passed Local Law No. 36 on September 25, 2002; the Mayor vetoed it on October 23, 2002; the Council overrode the Mayor’s veto on November 20, 2002.

. Loan flipping is a refinance in which the borrower receives no tangible benefit.

. Local Law No. 36 defines an affiliate as any person that controls, is controlled by, or is under common control with another person, including any successors in interest. (Administrative Code § 6-128 [a] [1].) Control means ownership of 10% or more of any class of outstanding stock of a company or the power to direct or cause the direction of management and policies. (Id.)

. The court has considered amicus curiae briefs from the Bond Market Association and the Securities Association, and from the New York Bankers Association, in support of injunctive relief and from the Brennan Center for Justice et al. in opposition. American Financial Services Association (AFSA) moved (motion sequence No. 02) for leave to intervene and admit an attorney pro hac vice. The pro hac vice admission was granted from the bench; the motion for leave to intervene was granted by stipulation of March 11, 2003, so-ordered by the prior assigned justice.

. Amicus Brennan Center argues that subprime lenders are risky business partners, citing an FDIC study that found that subprime lenders nationally constitute about 1% of all insured financial institutions, but account for 20% of depository institutions with safety and soundness problems.

. Intervenor AFSA has demonstrated, without dispute, that its membership includes federal savings associations, giving it standing. (See Matter of Dental Socy. v Carey, 61 NY2d 330, 333 [1984].) Amicus Brennan Center questions amicus New York Bankers Association’s membership and standing. Amici curiae need not meet the same standing test as parties; otherwise, amici would seek to intervene as parties.

. E.g., limitations on interest rates on first mortgage loans by federal savings institutions (12 CFR 560.2 [b]); restrictions on a federal savings association from “[processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages” (12 CFR 560.2 [b] [10]); terms of credit (12 CFR 560.2 [b] [4]); credit enhancements and debt cancellation agreements (12 CFR 560.2 [b] [2]); prepayment penalties (12 CFR 560.2 [b] [5]); disburse *157 ments to home improvement contractors (12 CFR 560.2 [b] [11]); local filing requirements for reports that federal savings institutions must maintain in connection with home loans (12 CFR 560.2 [b] [1]); and enforcement by other entities (OTS Letter P-98-6, July 1, 1998).

. Chapter 626 prohibits acceleration of the loan by the lender in its sole discretion (Banking Law § 6-1 [2] [a]); balloon payments more than twice as large as the average of earlier scheduled payments, unless the balloon payment becomes due at least 15 years after the loan’s origination (id. § 6-1 [2] [b]); negative amortization (id. § 6-1 [2] [c]); increasing interest rates after a default (id. § 6-1 [2] [d]); loan flipping (id. § 6-1 [2] [i]); lending without due regard to repayment ability (id. § 6-1 [2] [k]; and lending without counseling disclosure and providing of a list of counselors (id. § 6-1 [2] [k] [1]). Chapter 626 limits the amount of payments that can be consolidated and paid in advance from the loan proceeds (id. § 6-1 [2] [e]); it restricts the lender’s ability to pay a home improvement contractor; and contains many other provisions to protect high-cost borrowers. The Attorney General, the Superintendent of Banking, or any party to a high-cost home loan can enforce the statute. (Id. § 6-1 [5].) Chapter 626 also specifies the method of determining the recovery and any other relief. (Id. § 6-1 [7]-[ll].)

. Chapter 626 defines an “affiliate” to mean “any company that controls, is controlled by, or is under common control with another company, as set forth in the Bank Holding Company Act of 1956 (12 U.S.C. § 1841 et seq.).” (Banking Law § 6-1 [1] [a]; cf. Administrative Code § 6-128 [a] [1].)

. Defendants’ reliance on a recently introduced bill is similarly misplaced. (See 2003 NY Senate Bill S 269 [to prohibit the State, public authorities, and political subdivisions from engaging in business with financial institutions that engage in certain lending practices].) If passed, it would preempt all local laws restricting City agencies contracting with such lenders. Mere introduction of a bill does not evidence intent of the entire Legislature. That some senators now favor a different approach cannot be bootstrapped as evidence of lack of past preemptive intent or lack of current field preemption.

. Local Law No. 36 defines “financial assistance” to “include, but [is not] limited to, tax abatements (including, but not limited to, abatements of property, sales or mortgage recording taxes), cash payments or grants.” (Administrative Code § 6-128 [b] [4].)

. Given this court’s analysis of federal and state preemption, it is unnecessary to address severability or other alleged bases for preemption or invalidity, including Local Law No. 36’s apparent reallocation and limitation of mayoral powers without a referendum. The potential extraterritoriality issues posed by debarring a financial institution because it invests in certain loans (Local Law No. 36 § 2) need not be discussed.