JOSEPH M. DESTEFANO et al., Appellants, v EMERGENCY HOUSING GROUP, INC., et al., Respondents. [722 NYS2d 35] —In an action, *inter alia,* to permanently enjoin the operation of the defendant Emergency Housing Group, Inc., as a public nuisance, the plaintiffs appeal from an order of the Supreme Court, Orange County (Nicolai, J.), entered October 12, 1999, which granted the motion of the defendants Brion Travis, Glenn S. Goord, John Buono, George Pataki, and the State of New York, and the separate motion of the defendants Joseph Rampe, Margaret Kirchner, and the County of Orange, for summary judgment dismissing the complaint insofar as asserted against them to the extent it asserted a cause of action sounding in public nuisance, and granted the separate motion of the defendant Emergency Housing Group, Inc., for the same relief, and pursuant to CPLR 3211 (a) (7) to dismiss the cause of action asserting a breach of a municipal zoning ordinance.

Ordered that the order is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.

The defendant Emergency Housing Group, Inc. (hereinafter EHG), is a not-for-profit corporation housed in two buildings on

a large campus within the City of Middletown (hereinafter Middletown). The campus, which is owned by the New York State Dormitory Authority, is also the site of other organizations, including, among others, the Middletown Psychiatric Center. The services provided by EHG include a homeless shelter, an alcohol crisis center, providing primary care for alcoholics (see, 14 NYCRR 374.3 [a] [2]), and an aftercare program providing counseling and advice on job training and financial management. EHG's operation, which services all of Orange County, is largely funded by New York State and is licensed by the State.

According to data produced during discovery, approximately 4% of all people arrested in Middletown during a three year period between June 1995 and June 1998 were persons whose EHG intake forms reflected a prior address within Orange County but outside of Middletown. An additional 2% of arrests in Middletown were of persons whose EHG intake forms reflected a prior address outside Orange County. Among other evidence, these statistics were relied upon by the plaintiffs to support their theory that EHG created a public nuisance because it was a "magnet" inducing nonresidents to reside in Middletown without proper screening or supervision despite their violent tendencies or profound instability, thereby burdening Middletown resources and threatening the public safety.

The Supreme Court properly awarded summary judgment to the defendants dismissing the cause of action sounding in public nuisance. To sustain a cause of action sounding in public nuisance, the plaintiff must establish by clear and convincing evidence (see, *Copart Indus. v Consolidated Edison Co.*, 41 NY2d 564; *City of Rochester v Premises Located at 10-12 S. Washington St.*, 180 Misc 2d 17; *State of New York v Waterloo Stock Car Raceway*, 96 Misc 2d 350, 356; *County of Sullivan v Filippo*, 64 Misc 2d 533, 554; *Spenard Action Comm. v Lot 3, Block 1, Evergreen Subd.*, 902 P2d 766 [Alaska]), a substantial and unreasonable interference with the public right (see, *Copart Indus. v Consolidated Edison Co.*, 41 NY2d 564, *supra*; Restatement [Second] of Torts, § 821B; R. Abrams and V. Washington, *The Misunderstood Law of Public Nuisance: A Comparison with Private Nuisance Twenty Years After Boomer*, 54 Alb L Rev 359, 374). The defendants produced evidence sufficient as a matter of law to establish that the alleged interference was insubstantial and reasonable. In opposition, the plaintiffs failed to present sufficient evidence to raise a material question of fact as to that issue (see, *Zuckerman v City of New York*, 49 NY2d 557, 562).

The Supreme Court properly dismissed, for failure to state a cause of action, the second cause of action alleging that EHG breached the Middletown zoning ordinance by failing to obtain a special permit (*see,* CPLR 3211 [a] [7]).

EHG alleges that regulation of its operations is preempted by the State, citing, *inter alia,* Social Services Law §§ 460 through 463-b and 18 NYCRR part 485. Social Services Law § 460 applies to "residential care facilities" and Social Services Law § 461-b provides for State licensing of "adult care facilities," which include "shelters for adults," and "adult homes" (Social Services Law § 2 [23], [25]; *see also,* 18 NYCRR 485.2 [a]). Such facilities are heavily regulated by the State (*see,* 18 NYCRR 485.6 [a] [2]). In the instant case, EHG received an operating certificate from the Department of Social Services to operate a "shelter for adults."

In *Matter of Adkins v Board of Appeals* (199 AD2d 261), this Court held that a municipality's imposition of a condition upon the petitioner's permit to operate an adult home was illegal, because "regulation of adult-care facilities has been preempted by the State." Although *Adkins* involved an adult home, which is defined by statute as an adult care facility designed to provide long-term care (*see,* Social Services Law § 2 [25]), this Court held that preemption applied to "adult care facilities" (*Matter of Adkins v Board of Appeals, supra,* at 261). As previously noted, the statutory definition of "adult care facilities" includes both "adult homes" and "shelters for adults" (*see,* Social Services Law § 2 [23], [25]). Accordingly, the fact that this case involves a "shelter for adults" rather than an "adult home" is a distinction without a difference.

A "shelter for adults" is defined as a facility that provides not only temporary residential care, but also supervision and referral, information, and "social rehabilitation services" (Social Services Law § 2 [23]). Social rehabilitation services may include "assistance to the resident in securing * * * job training and job placement services" (18 NYCRR 491.8 [e] [2] [iv]), as well as activities to "improve physical and psychosocial functioning" (18 NYCRR 491.8 [e] [2] [v]).

As noted by our dissenting colleague, EHG provided services including primary care for alcoholics, counseling, and advice on job training. However, providing those services was consistent with and ancillary to its function as a "shelter for adults." Accordingly, no special permit was required from Middletown.

In view of the foregoing, the order is affirmed. Goldstein, J. P., McGinity and Luciano, JJ., concur.

Feuerstein, J., concurs in part and dissents in part and votes

to modify the order by deleting the provision thereof granting that branch of the motion of Emergency Housing Group, Inc., which was to dismiss the second cause of action alleging a breach of the City of Middletown zoning ordinance and substituting therefor a provision denying that branch of that motion with the following memorandum: Based upon the procedural status of this case, the lack of evidence in the record, and the failure of the defendant Emergency Housing Group, Inc. (hereinafter EHG) to demonstrate its entitlement to the relief requested, I would modify the order by reinstating the plaintiffs' second cause of action asserting a breach of the Middletown zoning ordinance. I concur with the majority to the extent of affirming the dismissal of the cause of action based on public nuisance.

Initially, EHG moved to dismiss the plaintiffs' second cause of action pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. However, nowhere in the record is there an affidavit or affirmation explaining the basis of the motion to dismiss. The Supreme Court held that EHG was "exempt from local regulatory control when [its] authority is exercised in furtherance of a governmental purpose." In its brief on appeal, EHG argues, for the first time, that the Middletown ordinance requiring a special use permit is preempted by State law.

On a motion pursuant to CPLR 3211 (a) (7) to dismiss a complaint for failure to state a cause of action, the pleading is to be liberally construed, accepting all the facts alleged in the complaint to be true and according the plaintiff the benefit of every possible favorable inference (see, Leon v Martinez, 84 NY2d 83, 87; Rotanelli v Madden, 172 AD2d 815, 816). The issue is whether the plaintiff has stated a cause of action and not whether he or she may ultimately be successful on the merits (see, Stukuls v State of New York, 42 NY2d 272, 275; Detmer v Acampora, 207 AD2d 475).

Here, EHG has not demonstrated that the plaintiffs failed to state a cause of action, as the record is bare regarding EHG's claims. Even upon review of EHG's arguments for the first time on appeal, I believe there is still no basis to dismiss the second cause of action.

EHG contends that it is entitled to an exemption from local zoning rules because it is a lessee of the New York State Dormitory Authority (hereinafter the Dormitory Authority). EHG relies upon Public Authorities Law § 1685 which provides exemptions from taxation for facilities operated under the power of the Dormitory Authority. First, that section is inapplicable here because it governs exemptions from taxation, not

zoning ordinances. Second, an exemption from taxation exists only if the property in question is being used to further the governmental interest of the Dormitory Authority. The Dormitory Authority's purpose is the financing and construction of dormitories for *educational* purposes (Public Authorities Law § 1678). Here, the EHG facility is, at best, for rehabilitative purposes. Therefore, EHG is not entitled to any exemption.

EHG also contends that the Middletown's zoning ordinance, as it applies to EHG, is preempted by State law. The law is clear regarding the standards for preemption: "Where the State has demonstrated its intent to preempt an entire field and preclude any further local regulation, local law regulating the same subject matter is considered inconsistent and will not be given effect (*see, e.g., Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 90, 97; *People v Cook,* 34 NY2d 100, 109). This finding of preemption is justified by the belief that '[s]uch laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns' (*Jancyn Mfg. Corp. v County of Suffolk, supra,* at 97; *see also, New York State Club Assn. v City of New York,* 69 NY2d 211, 217). The Legislature's intent to so preempt a particular area can be inferred from a declaration of policy or from a comprehensive or detailed scheme in a given area (*New York State Club Assn. v City of New York, supra; see also, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105). '[T]hat the State and local laws touch upon the same area is insufficient to support a determination that the State has preempted the entire field of regulation in a given area,' however (*Jancyn Mfg. Corp. v County of Suffolk, supra,* at 99)" (*Village of Nyack v Daytop Vil.,* 78 NY2d 500, 505).

EHG argues that Social Services Law §§ 460 through 463-b and 18 NYCRR part 485 preempt Middletown's zoning ordinance. Although there can be no question that these statutes and regulations apply to at least part of the facility operated by EHG, I do not find that the regulations were intended to preempt local municipalities' zoning laws. There is certainly no explicit statement of intent by the Legislature to preempt local zoning laws. Additionally, the regulations in question, while broad, do not "lead * * * inexorably to the conclusion that the State's commitment * * * preempts all local laws that may have an impact, however tangential," upon the siting of the facilities at issue here (*Village of Nyack v Daytop Vil.,* 78 NY2d 500, 506, *supra*). A finding of preemption in this case constitutes a failure to recognize that the EHG facility is not solely

an "adult care facility" as defined under the Social Services Law. It also contains alcohol rehabilitation and job training programs. While it may be arguable that a homeless shelter would qualify as an "adult care facility," there is no indication that the sections of the Social Services Law relied upon by EHG were intended to occupy the fields of alcohol rehabilitation and job training. Further, it is unlikely that Social Services Law §§ 460 through 463-b were intended to occupy the entire field of homeless shelters because there is a completely separate statute devoted to the regulation of such shelters (*see,* Social Services Law §§ 41 through 44). Finally, EHG's reliance upon this Court's decision in *Matter of Adkins v Board of Appeals* (199 AD2d 261), is misplaced because that case involved only a home for geriatric adults. Giving the broadest interpretation to the definition of "adult care facility" in Social Services Law §§ 460 through 463-b, it does not encompass a homeless shelter, alcohol rehabilitation program, and job training program as is presented here.

Accordingly, I would reinstate the second cause of action.