■ In the Matter of CITY OF NEW YORK, Petitioner, v TOWN OF BLOOMING GROVE ZONING BOARD OF APPEALS et al., Respondents. [761 NYS2d 241] —Proceeding pursuant to CPLR article 78 to review a determination of the respondent Town of Blooming Grove Zoning Board of Appeals, dated December 27, 2000, which, after a hearing, denied the petitioner's application to modify certain conditions contained in a special permit issued in 1981 by the Town of Blooming Grove Zoning Board of Appeals for the petitioner's Camp LaGuardia for homeless individuals, determined that the petitioner's use was unlawful, and directed compliance with the Town of Blooming Grove zoning law within 30 days.

Adjudged that the petition is granted, with costs, the determination is annulled, the application is remitted to the respondent Town of Blooming Grove Zoning Board of Appeals, and that respondent is directed to approve the petitioner's application to modify the 1981 special permit issued for the petitioner's Camp LaGuardia.

The petitioner, City of New York, is the owner of Camp LaGuardia (hereinafter the Camp), which is located on 260 acres of land situated partly in the Town of Chester and partly in the respondent Town of Blooming Grove in Orange County, New York. Since the 1950's the City has operated the Camp as a shelter for homeless men. Before that time, the premises had been used for many years as a women's prison.

Until 1980 the City used the existing prison facilities to house the homeless men, which meant that there were often two men assigned to what had once been a small jail cell. In 1980 the City sought to construct two dormitory buildings on a portion of the Camp located within the Town. The City applied

to the Town of Blooming Grove Zoning Board of Appeals (hereinafter the ZBA) for a special permit to operate as a "hospital" as that term was then defined in the Town's zoning law.

The ZBA approved the special permit in 1981 subject to a number of conditions, two of which have particular relevance to this proceeding. One condition stated that Camp residents should be prohibited from being in a particular area near the Camp "insofar as it may be lawful," and should be confined to Camp grounds "so far as legally possible." Another condition required the City to screen prospective residents "so as to insure that they will not be likely to cause problems within the facility or with the residents of the area."

In March 2000 the City applied to modify the 1981 special permit conditions. In particular, the City sought to change the 1981 condition that residents be restricted to the facility to conform it with state regulations (see 18 NYCRR 491.7 [d] [12]) that provided that "a resident shall be permitted to leave and return to the facility and grounds at reasonable hours." The City also sought to modify the 1981 condition concerning the screening of Camp residents to bring it in line with the screening provisions and limitations of federal and state law.

In a determination dated December 27, 2000, the ZBA denied the City's application to modify the 1981 permit, determined that the Camp was being operated in violation of the Town zoning law, and directed the City to comply therewith within 30 days. The ZBA determined that the City could (1) restrict Camp LaGuardia residents to the shelter's grounds far more than it had, and (2) screen more effectively by accessing statewide fingerprint and criminal history records.

Where the state has demonstrated its intent to preempt an entire field and thereby preclude any further local regulation, local laws regulating the same subject matter will be deemed inconsistent and will not be given effect (see Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991]; Matter of Ardizzone v Elliott, 75 NY2d 150, 155 [1989]). Regulation of adult-care facilities has been preempted by the state (see Rampe v Giuliani, 281 AD2d 609 [2001]; DeStefano v Emergency Hous. Group, 281 AD2d 449, 451 [2001]; Matter of Adkins v Board of Appeals, 199 AD2d 261 [1993]).

Since the Camp, as a shelter for homeless adults, is comprehensively regulated by the state, local zoning authorities are precluded from using zoning ordinances or permit requirements to control the details of shelter operations. Thus, many of the conditions in the 1981 special permit for the Camp, and most of the key findings in the ZBA's December 27, 2000, de-

termination, intrude on matters that have been preempted by the state, and therefore are beyond the ZBA's lawful purview.

Accordingly, the determination of the ZBA must be annulled and the matter remitted to it with the direction to approve the City's application. Florio, J.P., Feuerstein, Friedmann and Crane, JJ., concur.