OPINION OF THE COURT
Kaye, J.
The Town Board of defendant Town of Guilderland, a suburban community in Albany County, has projected that its population will increase substantially during the next 20 years, that such an increase will directly and adversely affect the existing transportation network, and that the road system would have to be expanded. The Board further found that current revenue sources were insufficient to fund the necessary capital improvements. On the stated theory that "[n]ew development should contribute its fair share of the costs of providing new facilities necessary to accommodate said new development,” the Board adopted a local law entitled the Transportation Impact Fee Law (TIFL). The validity of that law is the issue before us today.
TIFL provides that applicants for building permits who seek to make a change in land use that will generate additional traffic must pay a transportation "impact fee” when the permit is issued. The size of the fee is determined by a detailed schedule set forth in the law, which assesses fees based on size and use of the proposed development — the intention being to impose on the fee payer only "the fair share cost of improved roadways necessitated by the new development.” Alternatively, the law allows applicants to submit their own fee calculation study, but they must use a methodology prescribed in TIFL and must pay the Town 3% of the fee estimated by the independent study (up to $4,000) for "review and processing the study.”
Limited credits are allowed for roadway improvements. Builders receive no credit, however, for site-related improvements, and the credits are available only as against specific portions of the total impact fee. To obtain the credit, the applicant must present cost estimates and property appraisals prepared by qualified professionals, and post a performance bond or irrevocable letter of credit equal to 110% of the cost of construction. Finally, TIFL provides that all fees collected are to be deposited in a trust fund maintained by the Town, *376 and that the moneys shall be spent only for capital improvement, and for expansion of the roadway network and transportation facilities within the Town. No funds are to be used for routine maintenance.
Plaintiffs — two builders’ associations and three individual building companies — have challenged the Town’s authority to enact TIFL. They urge that the Town was without constitutional or statutory authority to enact TIFL, that impact fees are not permissible land use regulations, and that TIFL is both inconsistent with and preempted by existing State laws. The Town contends that TIFL is a permissible land use regulation authorized by section 10 of the Municipal Home Rule Law. The Appellate Division declared TIFL invalid, concluding that no statutory authority empowered the Town to enact the law, and that it is in any event preempted by the general laws regulating the funding of roadway improvements. We granted leave to appeal, and now affirm on the second ground.
It is a familiar principle that the lawmaking authority of a municipal corporation, which is a political subdivision of the State, can be exercised only to the extent it has been delegated by the State. While the Legislature has retained authority in matters of State concern, it has empowered municipalities to legislate in a wide range of matters relating to local concern (see, Kamhi v Town of Yorktown, 74 NY2d 423 [decided today]; New York State Club Assn. v City of New York, 69 NY2d 211, 217, affd 487 US 1). So long as local legislation is not inconsistent with the State Constitution or any general law, localities may adopt local laws both with respect to their "property, affairs or government” (see, NY Const, art IX, § 2 [c] [i]; Municipal Home Rule Law § 10 [1] [i]), and with respect to other enumerated subjects, except "to the extent that the legislature shall restrict the adoption of such a local law”. (See, NY Const, art IX, § 2 [c] [ii]; Municipal Home Rule Law § 10 [1] [ii].) The Town urges that these home rule powers encompass TIFL.
In support of its position the Town points to provisions of the Municipal Home Rule Law that permit towns to enact local laws that relate to their "property, affairs or government” (§ 10 [1] [i]); to the acquisition, care, management and use of local roads (§ 10 [1] [ii] [a] [6]); to the acquisition, ownership and operation of transit facilities (§ 10 [1] [ii] [a] [7]); to the fixing, levy, collection and administration of local *377 government fees (§ 10 [1] [ii] [a] [9-a]); and to the amendment or supersession, in their local application, of provisions of the Town Law (§ 10 [1] [ii] [d] [3]). We need not decide whether TIFL in fact falls within any of these delegated powers, however, because it is in any event preempted by State law.
The preemption doctrine represents a fundamental limitation on home rule powers (see, Dougal v County of Suffolk, 65 NY2d 668, affg on opn at 102 AD2d 531, 532; 5 McQuillin, Municipal Corporations § 15.20, at 101-104 [3d ed 1989]). While localities have been invested with substantial powers both by affirmative grant and by restriction on State powers in matters of local concern, the overriding limitation of the preemption doctrine embodies "the untrammeled primacy of the Legislature to act * * * with respect to matters of State concern.” (Wambat Realty Corp. v State of New York, 41 NY2d 490, 497.) Preemption applies both in cases of express conflict between local and State law and in cases where the State has evidenced its intent to occupy the field (see, e.g., Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs, 74 NY2d 761 [express conflict]; Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99 [intent to occupy the field]).
Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State’s transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. Such local laws, "were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns.” (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97.) Moreover, the Legislature need not express its intent to preempt (New York State Club Assn. v City of New York, supra, at 217). That intent may be implied from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area (see, Robin v Incorporated Vil. of Hempstead, 30 NY2d 347). A comprehensive, detailed statutory scheme, for example, may evidence an intent to preempt.
Applying these principles to the case at hand, we hold that the State Legislature has enacted a comprehensive and detailed regulatory scheme in the field of highway funding, preempting local legislation on that subject. By several provi *378 sions of the Town Law and Highway Law, the Legislature has evidenced its decision to regulate how roadway improvements are budgeted, how these improvements are financed, and how moneys for these improvements are to be expended.
With respect to the budget process, article 8 of the Town Law establishes an elaborate "budget system” (Town Law § 102), which delineates how towns are to budget for improvements and repairs to highways (see, Matter of Petito v O’Keefe, 52 Misc 2d 28, 30, affd 26 AD2d 991, lv denied 18 NY2d 583). Under that system, which requires disclosure of sources of revenue and proposed expenditures, towns are held accountable for public funds (see, e.g., Town Law §§ 107, 108 and 109 [requiring preparation and disclosure of preliminary and final budgets and public hearings]). Indeed, Highway Law § 141, together with Town Law § 104, mandates that prior to the preparation of a town budget, the town superintendent submit an estimate showing the amount to be raised by taxation for the construction, improvement, maintenance and repair of town highways.
The Legislature has also explicitly limited the amount a town can raise by taxation for highway purposes (see generally, Matter of Flike v Strobel, 252 App Div 35, 37). Town Law § 107 (3) provides that amounts to be raised by tax for highway purposes must be within the limitations of the Highway Law. Section 271 of the Highway Law, in turn, provides detailed restrictions on the amounts to be raised for improvements to highways, with varying limits depending on the town and the purpose of the improvement.
The manner in which funds are expended is also closely regulated by the Highway Law (see, Myruski v Town Bd., 87 Misc 2d 1063; Matter of Carlisle v Burke, 82 Misc 282; 14 Opns St Comp No. 58-184, at 72). Sections 284 through 285-a detail how funds are to be expended, requiring a written agreement between the town board, the town superintendent of highways, and the county superintendent of highways; funds for highway improvements may be paid out only "on vouchers approved by the town superintendent in accordance with such written agreement.” (Highway Law § 284.)
These provisions of State law, which safeguard the public fisc, "are grounded in the general principles of fiscal responsibility and the accountability that underpins the regulation of all public conduct”. (Matter of Korn v Gulotta, 72 NY2d 363, 373; Coggeshall v Hennessey, 279 NY 438; see also, 14 Opns St Comp No. 58-184, at 72.) The purpose, number and specificity *379 of these statutes make clear that the State perceived no real distinction between the particular needs of any one locality and other parts of the State with respect to the funding of roadway improvements, and thus created a uniform scheme to regulate this subject matter (see, People v De Jesus, 54 NY2d 465, 468).
It is equally manifest that TIFL intrudes on the legislative scheme in at least two significant respects. First, because TIFL directs moneys be paid into a separate fund, those moneys may escape the budgetary process established to regulate highway funding. Second, TIFL allows towns to evade statutory requirements for budgeting, accounting for revenues and documenting expenditures. In contrast to these directives, TIFL merely provides for payment into a trust fund, with funds to be used "for the purpose of capital improvements.” Thus, as the Appellate Division correctly observed: "Permitting towns to raise revenues with impact fees would allow towns to circumvent the statutory restrictions on how money is raised and, further, would permit towns to create a fund of money subject to limited accountability, not subject to the statutory requirements governing how funds for highway improvements are spent.” (141 AD2d 293, 300 [citations omitted].)
We therefore conclude that the State has evidenced a purpose and design to preempt the subject of roadway funding and occupy the entire field, so as to prohibit additional local regulation.
In that TIFL is preempted by State law, we need not reach the controversial question propounded by the parties and amici — whether local "impact fees” are permitted by statute, a question that has been the subject of considerable comment[1] and litigation in other jurisdictions.[2]
*380 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. See generally, Sweeney, The "Impact Fee”, An Exciting and Troublesome Concept, 60 NYSBJ 52 (Oct. 1988); Larsen & Zimet, Impact Fees: Et Tu, Illinois?, 21 J Marshall L Rev 489 (1988); Bauman & Ethier, Development Exactions and Impact Fees: A Survey of American Practices, 50 Law & Contemp Probs 51 (Winter 1987); Nicholas, Impact Exactions: Economic Theory, Practice, and Incidence, 50 Law & Contemp Probs 85 (Winter 1987); Juergensmeyer & Blake, Impact Fees: An Answer to Local Governments’ Capital Funding Dilemma, 9 Fla St UL Rev 415 (1981); Jacobsen & Redding, Impact Taxes: Making Development Pay its Way, 55 NC L Rev 407 (1977).

. Compare, e.g., New Jersey Bldrs. Assn. v Mayor of Bernards Twp., 108 NJ 223, 528 A2d 555, with Russ Bldg. Partnership v City & County of San Francisco, 188 Cal App 3d 977, 234 Cal Rptr 1, appeal dismissed 484 US 909, 108 S Ct 253; and Call v City of W. Jordan, 606 P2d 217 (Utah).