Richard B. Meyer, Esq. Informal Opinion County Attorney No. 2003-4 County of Essex 100 Court Street P.O. Box 217 Elizabethtown, New York 12932
Dear Mr. Meyer:
You have asked several questions regarding whether a non-charter county may enact a local law imposing fees upon individuals convicted of a crime, in connection with certain probation services. The proposed local law would impose fees upon persons convicted of a crime in the following types of cases:
 (1) where the local probation department prepares a pre-sentence investigation report pursuant to Criminal Procedure Law § 390.20
— a $300 fee;
 (2) where an individual has been sentenced to probation — a fee of $40 per month;
 (3) where an individual has been sentenced to probation and required to submit to electronic monitoring — a fee of $3 per day;
 (4) where an individual has been sentenced to probation and required, either by the sentencing court or the probation department, to submit to a drug test — a fee of $10 per test; and
 (5) where an individual has been sentenced to probation and required, either by the sentencing court or the probation department, to attend the victim impact panel[1] — a fee of $30 per session.
Regarding the county's ability to enact a local law providing for these fees, you have asked the following questions: (1) whether the State Legislature has preempted the area of probation services such that local governments may not legislate in this area; (2) whether fees for probation services are a matter of local concern or of state concern; and (3) assuming that fees for probation services are a matter of local concern, whether a county is authorized by the Municipal Home Rule Law to adopt a local law imposing fees as described above.
We conclude that the State has evinced an intent to preempt the area of probation services and thus that a county may not enact a local law imposing fees on individuals requiring these services except as specifically authorized by State statute. Because we so respond to your first question, we need not address your remaining questions.
Legal Framework
A municipality has broad power to enact local laws pursuant to the law of municipal home rule. See N.Y. Const. art. IX, § 2(c); Mun. Home Rule Law § 10. Such power is not, however, unbounded; one limitation is that the municipality may not enact legislation inconsistent with the Constitution or any general law. N.Y. Const. art. IX, § 2(c); Mun. Home Rule Law § 10(1).
Additionally, a municipality may not legislate in an area when the Legislature has restricted such legislation by preempting the area of regulation; such a local law would be considered inconsistent with State law. See, e.g., Incorporated Village of Nyack v. Daytop Village, Inc.,78 N.Y.2d 500, 505 (1991). The Legislature's intent to preempt local legislation in an area may be either express or implied. Implied preemption occurs where, notwithstanding the absence of an express exemption, State law indicates a purpose to "occupy the entire field so as to prohibit additional regulation by local authorities in the same area." Robin v. Incorporated Village of Hempstead, 30 N.Y.2d 347, 350
(1972). Preemptive intent may be inferred from a declaration of State policy by the Legislature or from the nature of the subject matter being regulated and the purpose and scope of the legislative scheme, including the need for statewide uniformity in a given area. See Albany AreaBuilders Ass'n v. Town of Guilderland, 74 N.Y.2d 372, 377 (1989);Consolidated Edison Co. of New York, Inc. v. Town of Red Hook,60 N.Y.2d 99, 105 (1983). If local laws were permitted to operate in a field preempted by State law, such laws "would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns." Jancyn Manufacturing Corp. v.County of Suffolk, 71 N.Y.2d 91, 97 (1987). The intent to preempt must, however, be evident; "unless pre-emption is limited to situations where the intention is clearly to preclude the enactment of varying local laws, `the power of local governments to regulate would be illusory.'"People v. Judiz, 38 N.Y.2d 529, 532 (1976) (quoting People v. Cook,34 N.Y.2d 100, 109 (1974)).
Regulatory Framework for Provision of Probation Services
Pursuant to Article XVII, § 5 of the State Constitution, the Legislature is authorized to "provide for the maintenance and support of institutions for the detention of persons charged with or convicted of crime and for systems of probation and parole of persons convicted of crime." In 1970, the Legislature established the Division of Probation ("the Division"), formerly a part of the Department of Correction, as a separate state agency within the Executive Department. L. 1970, ch. 479.[2]
In relation to fees for probation services, Executive Law § 257-c, enacted in 1992, grants counties limited authority to adopt local laws requiring individuals who have been sentenced to probation to pay to local probation departments an administrative fee of $30 per month. The grant of authority is restricted to a relatively small number of probation cases, i.e., those where the sentence is based upon a criminal conviction under Article 31 of the Vehicle and Traffic Law. Family Court Act § 252-a, also enacted in 1992, similarly grants counties limited authority to pass local laws authorizing probation departments to receive fees in a limited class of cases, i.e., where Family Court has ordered the probation department to conduct an investigation to aid the court in the determination of habeas corpus petitions and petitions for custody and visitation of minors. Family Court Act §§ 252-a, 651, 653.
With the exception of section 257-c of the Executive Law and section 252-a of the Family Court Act, the statutes regulating the provision of probation services do not expressly authorize or prohibit local legislation regulating fees for probation services. Moreover, the Division through its regulations has neither authorized nor prohibited the establishment or collection of other such fees by local probation agencies. Nonetheless, we believe that the State has evinced its intention to exclusively regulate the field of probation services such that local legislation pertaining to fees for services is preempted.
The statutes governing the provision of probation services do not include an express statement of preemption. Thus we must look at the relevant legislation and its regulatory scheme to determine whether the State has implicitly expressed an intent to preempt the field.
Purpose of Legislative Scheme
The pertinent legislation, Executive Law Articles 12 and 12-A, does not include a statement of policy. The legislative history of these provisions, however, proves helpful in understanding its purpose. In a statement in support of the creation of the new Division of Probation within the Executive Department, Senator John R. Dunne, a sponsor of the legislation, stated,
 Only the State has adequate power to assure uniformly high quality and comprehensive local delivery of the unique and diverse functions [performed by the local probation departments] throughout the State. Fulfillment of this responsibility requires the existence of an independent State agency, headed by a director responsible to the Governor, with authority to establish basic standards for the administration of probation. With this strong focus, the Division of Probation will be better able to stimulate effective local probation services.
L. 1970, ch. 479, Bill Jacket at 3. Accord, Mem. of State Exec. Dept., McKinney's Session Laws of 1970, at 2948. See also Mem. of Dept. of Law, Bill Jacket at 5; Mem. of Office of Crime Control Planning, Bill Jacket at 11; Mem. of Div. of Budget, Bill Jacket at 18-19.
In his statement upon approving the law, Governor Rockefeller stated, "Both the independent status of the Division and its power to provide probation services directly will enhance the establishment and maintenance of uniform, high standards for probation services throughout the State." McKinney's Session Laws of 1970, at 3102.
These statements indicate that both uniformity of services across the State and direct influence on local services by the Department were goals of the restructuring of the Department, and thus indicate that the State intended to preempt local legislation in the field. See Albany AreaBuilders Ass'n, 74 N.Y.2d at 378-79 (intent to preempt found when purpose, number, and specificity of statutes made clear that State perceived no real distinction between particular needs of any one locality and other parts of State and thus created uniform scheme to regulate subject matter); cf. Jancyn, 71 N.Y.2d at 98-99 (intent to preempt not found when policy statement did not indicate desire for "across-the-board uniformity" and when State statutory scheme neither vested State agency head with exclusive jurisdiction to regulate nor imposed control at local level through creation of local boards or issuance of detailed instructions to localities concerning procedures to be employed in fostering compliance with statute).
Nature of Regulatory Scheme
We are also of the opinion that the nature of the regulatory scheme adopted by the State, which is comprehensive and detailed as well as reflective of the desire for State-wide uniformity, indicates that the State intended to preempt local legislation in the area of probation services.
The Division is headed by the Director of Probation and Correctional Alternatives. Exec. Law § 240(1). The Director is granted sole authority over the administration of the Division and is charged with the general supervision of the administration of probation services throughout the State. Exec. Law §§ 240(2), 243(1).
Probation services are directly administered at the county level. Each county is required to establish or maintain a probation agency to perform probation services and functions that have been assigned by law to probation agencies. Exec. Law § 256. Under certain circumstances and either at the request of a county or on his own initiative, the Director of the Division may decide that the Division, rather than the county probation agency, will provide probation services in the county. Exec. Law § 247. The Director may also certify to a county legislature the need for additional probation officers in that county; if the county legislature confirms the need, it must provide the salary and expenses for those officers. Exec. Law § 257(2).
Among other responsibilities, local probation departments are charged with the investigation and preparation of pre-sentence reports and the supervision of persons who have been sentenced to probation as an alternative to incarceration,[3] including the administration of drug testing and electronic monitoring as ordered by a court. See Exec. Law §§ 256(1), 257; Penal Law § 65.00, 65.10; Crim. Proc. Law § 390.20; 9 N.Y.C.R.R. Parts 350, 351; People v. Hale,93 N.Y.2d 454, 461-462 (1999).
The Director of the Division is mandated to "secure the effective application of the probation system and the enforcement of . . . the probation laws throughout the state." Exec. Law § 243(1) (emphasis added). To that end, he has adopted rules regulating "methods and procedure in the administration of probation services." Id.; see 9 N.Y.C.R.R. Parts 346 to 369. Both the statutes and the regulations provide detailed guidelines on the manner in which services are to be provided by local probation departments, including general "rules" for the management of probation services that apply to all probation departments. 9 N.Y.C.R.R. Part 347. Also prescribed at the State level are, for example, rules concerning probation department staff development (9 N.Y.C.R.R. Part 346), the information to be gathered and recorded when conducting an investigation (9 N.Y.C.R.R. Part 350), and the manner in which supervision is to occur (9 N.Y.C.R.R. Part 351). In our opinion, the scope and detail of this regulatory scheme demonstrate the State's desire to control at the State level the provision of services to the exclusion of local regulation.
We further note that the State legislature has provided for partial funding of county probation services — up to fifty percent reimbursement by the State for "the approved expenditures incurred by the county . . . in maintaining and improving local probation services." Exec. Law § 246(2). Approved expenditures include salaries of professional staff and the rental, lease, or purchase of electronic monitoring equipment. 9 N.Y.C.R.R. § 345.2(c)(1), (7). This aid is not to include expenditures for capital improvements, and the receiving agencies must "conform to standards relating to the administration of probation services" as adopted by the Director of the Division. Id. This requirement indicates, as does the legislative history of the statute, that the State desires uniformity in the provision of services across all counties in the State. See In re Frey v. McCoy, 35 A.D.2d 1029, 1030
(describing statute preceding Executive Law Articles 12 and 12-A as requiring "substantial conformance by the local probation and parole agencies to State standards").
Additionally, we note that in view of these funding provisions, the Legislature mandated that probation fees collected under the authority of Executive Law § 257-c and Family Court Act § 252-a are not to be considered by the Division when determining state aid reimbursement. Exec. Law § 257-c(5); Family Court Act § 252-a(b). We observe that the local law you propose does not address this issue. In any event, only the State legislature has authority to determine how the collection of local probation fees would affect the State aid formula.
Clearly, if a county were to enact local legislation imposing fees for probation services without specific statutory authorization, the legislative aim of uniformity of services would be frustrated. Individuals for whom a pre-sentence investigation report is required and those sentenced to probation would be required to pay for those services in the enacting county while the same services could be received without charge in other counties. If other counties were to enact similar legislation, fees for the same services could vary widely across the State.
In sum, we conclude that both the State's intent in enacting the statutes regarding the provision of probation services and the regulatory framework for the provision of those services evince the State's intent to preempt the field, and therefore that counties may not legislate in this area except as specifically authorized by State statute.[4]
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
KATHRYN SHEINGOLD, Assistant Solicitor General
In Charge of Opinions
By: __________________________
FRANK BRADY
Assistant Solicitor General
[1] "Victim impact panel" apparently refers to a "victim impact program" established pursuant to Vehicle and Traffic Law §1193(1)(f).
[2] In 1985, the regulatory scope of the agency was broadened to include alternatives to incarceration programming and the agency's name was changed to the Division of Probation and Correctional Alternatives ("the Division") to reflect the Division's expanded authority. L. 1985, ch. 134.
[3] As a sentencing option under the State's penal code, probation provides an offender with an opportunity to rehabilitate himself under both the supervision of a probation officer and the continuing jurisdiction of the sentencing court. See People v. Letterlough,86 N.Y.2d 259, 264 (1995); Donnino, Practice Commentaries, McKinney's Cons. Laws of New York, Book 39, Penal Law Art. 65, at 300.
[4] We note that the Division has previously recommended that the probation administrative fee permitted under Executive Law § 257-c be expanded to allow imposition of a fee upon all probationers. Div. of Probation and Correctional Alternatives, 1993 Report on the Probation Administrative Fee 15 (1993). Furthermore, over the years, several bills aimed at funding local probation departments by requiring persons convicted of crimes to reimburse and/or pay fees for probation services have been introduced in the State legislature. See, e.g., 2002 N.Y. Assembly Bill A. 11717 (would permit local probation agencies to collect a fee for services from persons sentenced to probation following a conviction for a crime of domestic violence); 2001 N.Y. Senate Assembly Bill S. 1110, A. 1699 (would permit local probation agencies to collect a fee for services from all persons sentenced to probation); 1993 N.Y. Senate Assembly Bill S. 847, A. 1447 (would authorize localities to adopt local laws permitting local probation agencies to collect (1) fees for preparation of pre-sentence investigation reports and (2) probation fees from persons sentenced to probation). To date, none of these proposed revisions have been enacted.