OPINION OF THE COURT
Thomas K. Keefe, J.
*903 The defendant, James Blair, was charged on May 6, 2008 with one count of residing within 1,000 feet of real property, in violation of Local Law No. 8 (2006) of the County of Albany, a misdemeanor. By notice of motion filed on August 29, 2008, the defendant through his attorney, Julianne Girard, Esq., moves for omnibus relief. The People have responded through the affirmation in opposition of George P Ferro, Esq., filed on September 26, 2008. The matter now comes before the court for a decision.
Motion to Dismiss the Accusatory Instrument — Preemption
The defendant seeks an order dismissing the accusatory instrument on the ground that Albany County Local Law No. 8 (2006) is preempted by New York State law. Before reaching the merits of the above argument, the court addresses the People’s sole response to the instant motion — that “this Court has previously ruled on the constitutionality of this statute” in People v Wray (Albany City Ct, July 4, 2008, Kretser, J.). While, certainly, the above decision, among others, is entitled to respectful consideration, it is nonetheless well settled that a decision of a judge of coordinate jurisdiction is not binding precedent (see People v Hill, 16 Misc 3d 176, 182 [Crim Ct, NY County 2007]; People v Shieh, 174 Misc 2d 971, 972 [Crim Ct, NY County 1997]; Matter of Cruikshank, 169 Misc 514, 515 [Sur Ct 1938]; Matter of Herle, 165 Misc 46, 49-50 [Sur Ct 1937]; In re Kathan’s Will, 141 NYS 705, 712 [Sur Ct 1913]).
Local Law No. 8, which became effective on September 1, 2006, is entitled “A Local Law of the County of Albany, New York Establishing Residency Restrictions in the County of Albany For Sex Offenders Who Have Committed Criminal Offenses Against Minors” and provides the following at section 3: “A sex offender as herein defined shall not reside within one thousand feet of a real property compromising a public or nonpublic elementary school or secondary school, [or] a child care facility.” Local Law No. 8 defines “sex offender” at section 2 (a) as “a person who has been convicted of a sexual offense against a minor and has received a level two or three designation as defined in Article 6-C of the New York State Correction Law.” Section 2 (b), in turn, defines a “child care facility” as “licensed and/or registered child day care centers, group family day care homes and family day care homes as defined by the New York State Social Services [L]aw.” Lastly, section 2 (c) defines the term “residence” as “the place where a person sleeps, which may include more than one location, and may be mobile or transitory.”
*904 Albany County is not unique among localities in enacting residency restrictions for sex offenders. The rise of such local laws throughout New York State was recently noted by Supreme Court:
“ ‘sex offender residency restrictions are multiplying throughout New York State, as local legislatures scramble to outmaneuver each other with highly restrictive ordinances designed to banish registered offenders from their communities. “Not in my backyard” residency restrictions are spreading unchecked through county town and village ordinance books from Suffolk County to Niagara Falls. More than 80 such laws have recently been enacted in New York’ ” (People v Oberlander, Sup Ct, Rockland County, Jan. 22, 2009, Kelly, J., indictment No. 02-354, slip op at 2, quoting O’Connor, Outside Counsel, State Preemption of Local Sex-Offender Residency Laws, NYLJ, Nov. 24, 2008, at 4; see Hutchins, Colonie May Restrict Where Some Sex Offenders Can Stay, Albany Times Union, Feb. 11, 2009).
In fact, enactment of sex offender residency restrictions and challenges to such laws are occurring nationwide (see G.H. v Township of Galloway, 401 NJ Super 392, 951 A2d 221 [App Div 2008]; Levenson and Hern, Sex Offender Residency Restrictions: Unintended Consequences and Community Reentry, 9 Just Res & Pol’y 59 [2007], available at http://www.nacdl.org/ sl_docs.nsf/issues/SexOffender_attachments/$FILE/ Lev_Hern.pdf [accessed Feb. 12, 2008]).
While the defendant raises multiple constitutional challenges to Local Law No. 8, the court initially addresses whether this law is preempted by New York State law. The New York Constitution empowers municipalities to make local laws “not inconsistent with the provisions of this constitution or any general law” (NY Const, art IX, § 2 [c] [i] [Home Rule Clause]; see Municipal Home Rule Law § 10; Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 96 [1987]). However, “[t]he preemption doctrine represents a fundamental limitation on home rule powers” (Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 [1989]) and “local police power may not be exercised in an area in which it is preempted by State law” (People v Oberlander, slip op at 2; see Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d at 96). “Where the State has demonstrated its intent to preempt an entire field and preclude any further local regula *905 tion, local law regulating the same subject matter is considered inconsistent and will not be given effect” (Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991]). It is well settled that “[preemption applies both in cases of express conflict between local and state law and in cases where the State has evidenced its intent to occupy the field” (Albany Area Bldrs. Assn. v Town of Guilderland at 377; see Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99 [1983]). Indeed, “[i]t is enough that the Legislature has impliedly evinced its desire to [occupy an entire field] and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area” (New York State Club Assn. v City of New York, 69 NY2d 211, 217 [1987]). The State’s intent to occupy an entire field may additionally be implied “from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area” (Albany Area Bldrs. Assn. v Town of Guilderland at 377). Applying these principles to the case at hand, this court agrees with the recent decision issued by the Supreme Court (see People v Oberlander, supra) that the New York State Legislature has enacted a comprehensive and detailed regulatory scheme regarding the registration and regulation of sex offenders, preempting local legislation on this subject.[1]
The Sex Offender Registration Act, as well as other state laws, demonstrates the Legislature’s intent to provide a compre *906 hensive and evolving regulation over the lives of convicted sex offenders. The Legislature set forth its intent in the preamble to SORA:
“The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies’ efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders.
“The system of registering sex offenders is a proper exercise of the state’s police power regulating present and ongoing conduct. Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
“Persons found to have committed a sex offense have a reduced expectation of privacy because of the public’s interest in safety and in the effective operation of government. In balancing offenderst’] due process and other rights, and the interests of public security, the legislature finds that releasing information about sex offenders to law enforcement agencies and, under certain circumstances, providing access to limited information about certain sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.
“Therefore, this state’s policy, which will bring the state into compliance with the federal crime control act 42 U.S.C. 170101 [42 U.S.C.A. 14071], is to assist local law enforcement agencies’ efforts to protect their communities by requiring sex offenders to reg *907 ister and to authorize the release of necessary and relevant information about certain sex offenders to the public as provided in this act.” (Correction Law § 168 [emphasis added].)
With the enactment of SORA, the Legislature expressed its intent to regulate the present and future conduct of sex offenders for the purpose of assisting law enforcement agencies in protecting vulnerable populations and the public from potential harm. To further this aim, SORA created an individualized three-tiered classification and registration scheme based upon perceived risk of re-offense (see Correction Law §§ 168-b, 168-c). While the degree of public access to certain information, including a sex offender’s address, varies according to classification (see Correction Law § 168-Z), all sex offenders must register with the Division of Criminal Justice Services and verify certain personal information with law enforcement agencies having jurisdiction on a regular basis (see Correction Law § 168-f). A sex offender’s home, school, work and internet addresses, among other things, are included in the registration/verification process and a sex offender must report address changes to his/her local law enforcement agency having jurisdiction (see Correction Law §§ 168-f, 168-a).
In keeping with its stated intent to regulate the conduct of sex offenders, in 2000, the Legislature amended Penal Law § 65.10 (“Conditions of probation and of conditional discharge”) by adding a new section dealing with mandatory conditions for sex offenders (see Penal Law § 65.10 [4-a]). The law now provides, inter alia, that when sex offenders (with victims under the age of 18) and level three offenders are sentenced to conditional discharge or probation, the sentencing court must:
“require, as a mandatory condition of such sentence, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of this chapter, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present” (Penal Law § 65.10 [4-a] [a] [emphasis added]).
Penal Law § 220.00 (14) defines “school grounds” as:
“(a) in or on or within any building, structure, athletic playing field, playground or land contained *908 within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an ‘area accessible to the public’ shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants.” (Emphasis added.)
Thus, Penal Law § 65.10 (4-a) already establishes a de facto residency restriction by prohibiting certain sex offenders from knowingly “entering into or upon” 1,000 feet of “school grounds” or any other facility used for the care of children under the age of 18 (see also Executive Law § 259-c [14]). Local Law No. 8, which prohibits designated level two and three sex offenders from residing within 1,000 feet of a school or child care facility, therefore seeks to impermissively regulate the same subject matter as Penal Law § 65.10 (4-a).
The State’s comprehensive legislative scheme is further illustrated by the Legislature’s enactment of the Sex Offender Management and Treatment Act (L 2007, ch 7), which, among other things,
“create[d] a new Mental Hygiene Law article 10— providing] that offenders convicted of enumerated crimes, including sex offenses, may be transferred to psychiatric hospitals after their release from prison if certain procedures are followed. Article 10 [of the Mental Hygiene Law] establishes a multistep process that may lead to the civil commitment of some offenders and the outpatient supervision and treatment of others” (State of N.Y. ex rel. Harkavy v Consilvio, 8 NY3d 645, 651 [2007]).
Through its legislative findings, once again, the Legislature articulated its dominance over the management and treatment of convicted sex offenders:
“(a) That recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management. Civil and criminal processes have distinct but overlapping goals, and both should be part of an integrated approach that is based on evolving scien *909 tifie understanding, flexible enough to respond to current needs of individual offenders, and sufficient to provide meaningful treatment and to protect the public . . .
“(c) That for other sex offenders, it can be effective and appropriate to provide treatment in a regimen of strict and intensive outpatient supervision. Accordingly, civil commitment should be only one element in a range of responses to the need for treatment of sex offenders. The goal of a comprehensive system should be to protect the public, reduce recidivism, and ensure offenders have access to proper treatment.
“(d) That some of the goals of civil commitment— protection of society, supervision of offenders, and management of their behavior — are appropriate goals of the criminal process as well. For some recidivistic sex offenders, appropriate criminal sentences, including long-term post-release supervision, may be the most appropriate way to achieve those goals” (Mental Hygiene Law § 10.01).
Thus with the enactment of the Sex Offender Management and Treatment Act, the Legislature acknowledged, among other things, the need for flexibility in the State’s management and treatment of sex offenders. Such state policy stands in stark contrast to the rigidity of Local Law No. 8.
Perhaps the most compelling evidence of the State’s intent to occupy the field of sex offender regulation (including the residency of said offenders) is found in chapter 568 of the Laws of 200.8, which is instructively entitled “Placement of Certain Sex Offenders.” These laws require the Division of Parole, the Division of Probation and the Office of Temporary and Disability Assistance to establish housing guidelines for level two and three sex offenders who are currently on probationary supervision, parole or who have applied for or are receiving public assistance. In addition, Executive Law § 243 (4); § 259 (5) and Social Services Law § 20 (8) (a) each set forth the following list of factors that the above agencies must consider when reviewing a housing request from a level two or three sex offender:
“(a) the location of other sex offenders required to register under the sex offender registration act, specifically whether there is a concentration of registered sex offenders in a certain residential area or municipality;
*910 “(b) the number of registered sex offenders residing at a particular property;
“(c) the proximity of entities with vulnerable populations;
“(d) accessibility to family members, friends or other supportive services, including, but not limited to, locally available sex offender treatment programs with preference for placement of such individuals into programs that have demonstrated effectiveness in reducing sex offender recidivism and increasing public safety; and
“(e) the availability of permanent, stable housing in order to reduce the likelihood that such offenders will be transient” (Executive Law § 259 [5]; see Executive Law § 243 [4]; Social Services Law § 20 [8] [a]).
Thus, the placement of sex offenders is statutorily vested with the Division of Parole, the Division of Probation and the Office of Temporary and Disability Assistance. With consideration of the enumerated factors that these government agencies must now consider, it is entirely possible, based on a sex offender’s individual circumstance, that the most appropriate residence for a particular sex offender is within an area that Local Law No. 8 prohibits. It is therefore likely that Local Law No. 8 would act to frustrate state policy and law. Moreover, it is particularly instructive that the Governor’s Approval Memorandum to chapter 568 of the Laws of 2008 provides, in relevant part, that
“[fjinding suitable housing for any offender — and especially for those who are returning to the community after serving a long prison sentence — is an enormous challenge given the shortage of affordable housing in many communities. For sex offenders who are seeking housing, these placements are made more challenging by well-intentioned: (1) State laws restricting sex offenders who are on probation or parole from entering within 1000 feet of school grounds; and (2) the proliferation of local ordinances imposing even more restrictive residency limitations on registered sex offenders. One result of these restrictions is that the Division of Parole, local probation departments and local social services officials struggle daily to find suitable housing for these offenders.
“This bill recognizes that the placement of these offenders in the community has been and will continue *911 to be a matter that is properly addressed by the State.” (2008 McKinney’s Session Laws of NY, at 1669 [emphasis added].)
Thus, the Legislature has affirmatively recognized the proliferation of, and problems resulting from, local residency restrictions and has categorically stated that the placement of sex offenders in the community has been and will continue to be an area for state governance.
In addition, the Legislature recently summarized its comprehensive and detailed regulatory scheme dealing with convicted sex offenders:
“The danger of recidivism posed by sex offenders who commit predatory acts against children, and the protection of the public from these offenders, are of paramount concern and interest to the legislature. As a result, the legislature has enacted a series of laws to monitor sex offenders and protect the public from victimization, specifically, a system to: register sex offenders; provide law enforcement agencies, entities with vulnerable populations, and the general public access to information contained in the state’s sex offender registry; prohibit high risk sex offenders from entering upon school grounds; and civilly confine dangerous sex offenders who would likely re-offend if released. Such laws have enhanced the state’s ability to protect the public and prevent further victimization, sexual abuse and exploitation” (L 2008, ch 67, § 1).
The need for statewide uniformity (see Albany Area Bldrs. Assn. v Town of Guilderland at 377) in the regulation and management of sex offenders is underscored by the recent publicized news reports that in response to a “clustering” of sex offenders in certain motels in the Town of Colonie, the Town Board has approved the creation of a task force to evaluate whether the Town can pass a more restrictive residency restriction than the existing Local Law No. 8 (see Hutchins, Colonie May Restrict Where Some Sex Offenders Can Stay, Albany Times Union, Feb. 11, 2009; DeMare and Carleo-Evangelist, Local Laws Create Tangle, Albany Times Union, Feb. 16, 2009). As was noted by Supreme Court, such county versus town local legislative scrambling to pass the most restrictive residency laws is presently occurring, unchecked, throughout the state (see People v Oberlander slip op at 2). As easily imagined and as was already noted by the Legislature, these “not in my *912 backyard” (see id.) local residency restrictions create great difficulties for the Division of Parole, local probation and social service agencies to locate appropriate housing for sex offenders (see Governor’s Approval Mem).[2]
The State’s legislative pronouncements to date unquestionably establish, to the court’s satisfaction, that the regulation and management of sex offenders (including sex offender residency restrictions) is the exclusive province of the State, and thus, Local Law No. 8 is preempted by state law and will not be given effect. Motion to dismiss is granted.
Other Motions
The court’s dismissal of the above charge renders the defendant’s remaining motions academic.

. The Oberlander court relied, in great measure, on G.H. v Township of Galloway (supra), a recent decision issued by the Superior Court of New Jersey, Appellate Division. In that case, the New Jersey appellate court held that “[t]he farreaching scope of [New Jersey’s] Megan’s Law and its multilayered enforcement and monitoring mechanisms constitute a comprehensive system chosen by the [State] Legislature to protect society from the risk of reoffense by [convicted sex offenders] and to provide for their rehabilitation and reintegration into the community” (G.H. v Township of Galloway, 401 NJ Super 392, 399-400, 951 A2d 221, 225 [2008]). Thus, the court held that New Jersey state law preempted local legislation seeking to regulate the residency of convicted sex offenders. In so holding, the court invalidated more than 100 local sex offender residency ordinances. This court is mindful that New York’s Sex Offender Registration Act (hereinafter SORA), or New York’s “Megan’s Law” (see Correction Law art 6-C), was modeled after New Jersey’s “Megan’s Law” (see People v Roe, 177 Misc 2d 960, 962 [Nassau County Ct 1998]; People v Jimenez, 178 Misc 2d 319, 321 [Sup Ct, Kings County 1998]; Bonacquist, Practice Commentaries, McKinney’s Cons Laws of NY, Book 10B, Correction Law art 6-C, at 275) and, therefore, G.H. v Township of Galloway (supra) is highly instructive.

. The Legislature also notes that state law restricting sex offenders from entering within 1,000 feet of school grounds (see Penal Law § 65.10 [4-a]; Executive Law § 259-c [14]) creates daily struggles for the affected agencies to find suitable housing for sex offenders.