Matter of Vincent v Adams (2025 NY Slip Op 04146)

Matter of Vincent v Adams

2025 NY Slip Op 04146

Decided on July 10, 2025

Appellate Division, First Department

Higgitt, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 10, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Ellen Gesmer Manuel Mendez John R. Higgitt Kelly O'Neill Levy

Index No. 450563/24|Appeal No. 3780|Case No. 2024-05186|

[*1]In the Matter of Marie Vincent et al., Petitioners-Appellants,
v
Mayor Eric Adams etc., et al., Respondents-Respondents.
In Matter of The Council of the City of New York, Petitioner-Plaintiff-Appellant,
v
Mayor Eric Adams etc., Respondent-Defendant-Respondent. Women In Need ("WIN"), Coalition for the Homeless, Help USA, Homeless Services United, Interfaith Assembly on Homeless and Housing, New York Coalition for Homeless Youth and Community Service Society of New york ("CSS"), Amici Curiae.

Petitioners and petitioner-plaintiff appeal from an order of the Supreme Court, New York County (Lyle E. Frank, J.), entered August 6, 2024, which, to the extent appealed from, denied the petition seeking an order directing respondent Mayor Eric Adams to implement Local Law Nos. 99, 100, 101 and 102 (2023) and to declare that the Local Laws are not preempted by New York State law.

Twyla Carter, The Legal Aid Society, New York (Robert Desir, Adriene Holder, Judith Goldiner, Edward Josephson, Alex MacDougall of counsel), for Marie Vincent, Carolina Tejada, Mary Cronneit and Susan Acks, appellants.
Office of the General Counsel for the New York City Council, New York (Nwamaka G. Ejebe, Jason OtaÑo, Jeffrey Campagna and Amanda Delgrosso of counsel), and Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York (Anderew G. Celli, Jr., Diane L. Houk, Sonya Levitova and Laura S. Kokotailo of counsel), for The Council of the City of New York, appellant.
Muriel Goode-Trufant, Corporation Counsel, New York (Devin Slack, Richard Dearing and D. Alan Rosinus of counsel), for respondents.
Cleary Gottlieb Steen & Hamilton LLP, New York (Roger A. Cooper, Jennifer Pollan, Catherine Guerrier and Jack Samuel of counsel), for amici curiae.

Higgitt, J. 

On this appeal from an order denying CPLR article 78 petitions challenging the Mayor of the City of New York's refusal to enforce certain local laws designed to improve City government-sponsored rental assistance, we are asked to determine whether the City Council was preempted by the New York State Social Services Law and its implementing regulations from passing those local laws. For the reasons that follow, we conclude that the City Council was not preempted from legislating in the field of rental assistance.
I.
A.
"In New York State, the social services program is a State program, administered through . . . 58 local social services districts under the general supervision of the State Department of Social Services and the State Commission of Social Services" (Matter of Beaudoin v Toia, 45 NY2d 343, 347 [1978]).[FN1] Each of the 57 counties outside of New York City constitutes a county social services district (Social Services Law § 61[2]). Section 61(1) 0f the Social Services Law provides that "[t]he city of New York is . . . constituted a city social services district." The City "shall have all the powers and duties of a social services district insofar as consistent with the provisions of the special and local laws relating to such city" (Social Services Law § 56). A "social services district"[FN2] is "responsible for the assistance and care of any person who resides or is found in its territory and who is in need of public assistance and care" (Social Services Law § 62[1]; see Social Services Law §§ 88, 91 [relating to obligation to make necessary appropriations]). A "social services district" must have a "social services department" responsible for administering public assistance or care within the district (Social [*2]Services Law §§ 2[17], 77; see Social Services Law § 131[1]). At bottom, the social services district has the responsibility to provide assistance and care to the needy, and the social services department is obliged to administer the assistance and care for which the district is responsible.
B.
The State, through its Commissioner of the Department of Social Services (see Social Services Law § 11), supervises the social services districts (see Social Services Law § 34[3][d]; see also Social Services Law § 20[2][b], [3][a]). The powers of the Commissioner are enumerated in several statutes. These powers include, as relevant here: to "determine the policies and principles upon which public assistance, services and care shall be provided within the state both by the state itself and by the local governmental units within the limits hereinafter prescribed [in the Social Services Law]" (id. at § 17[a]); to "make known his [or her] policies and principles to local social services officials and to the public and private institutions and welfare agencies subject to his [or her] regulatory and advisory policies" (id. at § 17[b]); to "take cognizance of the interests of health and welfare of the inhabitants of the state who lack or are threatened with the deprivation of the necessaries of life and of all matters pertaining thereto" (id. at § 34[3][c]); to "exercise general supervision over the work of all local welfare authorities" (id. at § 34[3][d]); to "enforce [the Social Services Law] and the regulations of the department within the state both by the state itself and by the local governmental units" (id. at § 34[3][e]); and to "establish regulations for administration of public assistance and care within the state both by the state itself and by the local governmental units, in accordance with law" (id. at § 34[3][f]).
Section 20 of the Social Services Law lists various powers of the State Department of Social Services (State DSS), generally. Those powers include: to "administer all the forms of public welfare work for which the state is responsible" (id. at § 20[2][a]); to
"supervise all social services work, as the same may be administered by any local unit of government and the social services officials thereof within the state, advise them in the performance of their official duties and regulate the financial assistance granted by the state in connection with said work" (Social Services Law § 20[2][b]);
and
"supervise local services departments and in exercising such supervision the department shall approve or disapprove rules, regulations and procedures made by local social services officials within thirty days after filing of same with the commissioner; such rules, regulations and procedures shall become operative immediately upon approval or on the [30th] day after such submission to the commissioner unless the commissioner shall specifically disapprove said rule, regulation or procedure as being inconsistent with law or regulations of the [*3]department" (Social Services Law § 20[3][a]).
Availing itself of its rule-making power, the State DSS has promulgated regulations addressing a vast spectrum of social service matters, including rental assistance. As pertinent to this appeal, the State DSS has enacted, and amended many times, 18 NYCRR 352.3 ("Rent allowances"), which establishes, among other things, that each social services district must provide a monthly allowance for rent for qualified individuals (18 NYCRR 352.3[a][1]). Rule 352.3 also establishes, for each social services district, the maximum rental allowance based on the size of a recipient family and whether the recipient family has one or more children (18 NYCRR 352.3[a][1]). State DSS recognized, however, that a social services district may wish to offer its rental-assistance recipients an "additional monthly shelter supplement" (18 NYCRR 352.3[a][3][i]). Thus,
"[a] social services district, with the approval of the Office of Temporary and Disability Assistance [the Office], may provide additional monthly shelter supplements to public assistance applicants and recipients who will reside in private housing, or who currently reside in private housing and are facing eviction. Social services districts choosing to provide such supplements must submit a plan to the [Office] . . . prior to providing any such supplements" (id.).
As to the Office's approval,
"[t]he [O]ffice may authorize a social services district to provide such supplement or a distinct part of such supplement if it determines that the provision of such supplement would accomplish its stated purpose and is justified considering such factors as the length of temporary housing stays, existing litigation and other factors affecting the availability of housing. The [O]ffice must also consider the impact of granting the supplement on the economic incentives for self-sufficiency and the impact on low-income households which are not in receipt of public assistance. The [O]ffice may authorize the supplement only if it determines that there are sufficient funds available to provide such reimbursement" (18 NYCRR 352.3[a][3][ii]).
Thus, with respect to rental assistance, State DSS establishes the maximum rental allowance that a social services district must provide to recipients of rental assistance. However, a social services district is permitted to propose to the State DSS an additional shelter supplement, which proposal the State DSS can approve, in whole or in part, or reject.
C.
The New York City Fighting Homelessness and Eviction Prevention Supplement (FHEPS) was an executive branch housing voucher initiative created by the DeBlasio administration in 2018. FHEPS was implemented to streamline administration of city-funded rental assistance and curb homelessness. FHEPS is a "shelter supplement" under 18 NYCRR 352.3. According to appellants and the amici, FHEPS presented restrictive eligibility criteria and significant bureaucratic requirements, and provided relief [*4]to a very limited segment of the New York City housing-insecure population.
II.
In 2023, the City Council passed four local laws that modify FHEPS (Local Law Nos. 99-102 [2023] of City of NY). These FHEPS reform laws were prompted by three conditions faced by the City: the rising number of evictions of residential tenants, a dramatic increase in the rate of homelessness, and an overburdened shelter system.[FN3] These laws were designed to broaden eligibility for City-funded rental assistance, and promote quantitatively and qualitatively greater assistance. Thus, the FHEPS reform laws increased the income eligibility threshold, eliminated a 90-day shelter residency requirement, eliminated recipient work requirements, prohibited the New York City Department of Social Services (City DSS) from deducting a utility allowance from the maximum rental allowance for a FHEPS voucher, and expanded the list of individuals eligible for rental assistance (see Local Law Nos. 99-102).
The Mayor responded by vetoing the FHEPS reform laws (see NY City Charter § 255), citing budgetary and policy concerns. The City Council countered by overriding the veto (see id.), and the FHEPS reform laws went into effect on January 9, 2024. However, the Mayor has refused to enforce the FHEPS reform laws. His administration has insisted that financial, operational, and legal impediments exist that prevent the executive branch of City government from enforcing the new local laws.
Several individuals who hoped to avail themselves of the benefits of the FHEPS reform laws commenced this CPLR article 78 proceeding, challenging the Mayor's refusal to implement those laws. The individuals initiated the proceeding as a putative class action, and bring the case on behalf of themselves and others similarly situated. The City Council was granted leave to intervene in the proceeding, and sought an order directing the Mayor to implement the FHEPS reform laws or, alternatively, a declaration that those laws are valid. With respect to the principal relief sought, the City Council makes plain that it "seeks only that the Mayor be directed to take action to implement [the new local laws]. How the administration implements the [FHEPS] Reform Laws is within the administration's discretion."
The Mayor opposed the article 78 petition on the ground that the FHEPS reform laws are preempted by the State's Social Services Law.
III.
Supreme Court denied the petition and dismissed the proceeding, concluding that under the doctrine of field preemption, the FHEPS reform laws are preempted by the Social Services Law. The court further concluded that the City DSS is the "social services district" under Social Services Law § 61, and that the City DSS, not the City Council, has the exclusive authority within City government to make social services policy.
IV.
On appeal, the City Council argues that the Social Services Law does not preempt the field of rental assistance because that law does not clearly evince a [*5]desire by the State Legislature for statewide uniformity in that field. To the contrary, notes the City Council, the Social Services Law encourages local innovation and problem-solving by the City. Next, the City Council contends that the "social services district" for the City of New York is the City itself (including the City Council as the legislative branch of government), not the City DSS, and, therefore, it is the City Council that possesses the policy-making authority regarding rental assistance.
The individual petitioners also appeal. They stress that the City Council, as the legislative branch of City government, enjoys the policy-making privilege inherent in enacting local legislation that the executive branch is compelled to implement. The individual petitioners point to Social Services Law § 56, which provides that the powers and duties of the social services department must be consistent with both state and local law. The individual petitioners maintain that neither field nor conflict preemption dooms the FHEPS reform laws.
The Mayor responds that Supreme Court correctly concluded that the FHEPS reform laws are barred by field preemption. The Mayor contends that, by virtue of a comprehensive legislative scheme, control and coordination of public assistance rests with the State. While the Mayor acknowledges that the Social Services Law allows for local input to address local issues, he insists that the Social Services Law confers upon the Mayor, through the City DSS, the power to devise rental assistance policy. Under the Mayor's analysis, the City Council is limited to certain enumerated powers in the realm of public assistance (e.g., making appropriations and levying taxes). The City DSS, not the City government broadly, is the relevant social services district.
V.
The issue of whether the City Council was preempted by state law from passing the FHEPS reform laws is greatly informed by the Court of Appeals' recent decision in Police Benevolent Assn. of the City of New York, Inc. v City of New York (40 NY3d 417 [2023]). As to the relationship between the City's home rule authority and preemption, the Court wrote,
"[t]he constitutional home rule provision authorizes municipalities to adopt local laws pertaining to the government, protection, order, conduct, safety, health and well-being of their citizens, so long as such local laws are not inconsistent with the constitution or general state laws (NY Const, art IX, § 2 [c] [10]). The doctrine of preemption acts as a significant restriction on the home rule powers of municipalities. Local laws may be inconsistent with and preempted by state law either because the legislature has occupied the relevant field of regulation or because the local law conflicts with state law (see Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 377 [1989])" (Police Benevolent Assn., 40 NY3d at 423 [internal quotation marks omitted]).
With respect to field preemption, the Court counseled as follows[*6]:
"[f]ield preemption prohibits a local government from legislating in a field or area of the law where the [l]egislature has assumed full regulatory responsibility (People v Torres, 37 NY3d 256, 265 [2021], quoting DJL Rest. Corp. v City of New York, 96 NY2d 91, 95 [2001]). When the State has assumed that responsibility and preempted the entire field, a local law regulating the same subject matter is deemed inconsistent with state law for purposes of the home rule provision if it either prohibits conduct which the [s]tate law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe or . . . imposes additional restrictions on rights granted by [s]tate law (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97 [1987] [citations omitted]; see New York State Club Assn. v City of New York, 69 NY2d 211, 221-222 [1987], affd 487 US 1 [1988]; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683 [1980]). Permitting such laws to operate in a field preempted by the State would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns (Jancyn Mfg. Corp., 71 NY2d at 97; see Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991]).
"The state legislature's intent to preempt local legislation need not be expressly stated. Intent to occupy a field to the exclusion of local legislation can be implied from a declaration of state policy, the State's enactment of a comprehensive and detailed regulatory scheme in a particular area, or from the nature of the subject matter being regulated and the purpose and scope of the [s]tate legislative scheme, including the need for [s]tate-wide uniformity in a given area (People v Diack, 24 NY3d 674, 679 [2015] [internal quotation marks and citations omitted]; see Albany Area Bldrs. Assn., 74 NY2d at 377; Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 105 [1983])" (Police Benevolent Assn. at 423-424 [internal quotation marks omitted]).
Here, the State has not preempted the field of rental assistance, expressly or implicitly. As to the former, nowhere in the Social Services Law has the Legislature expressly stated an intention to preempt local legislation relating to rental assistance.
As to the latter, no clear intent to occupy the field to the exclusion of local legislation can be implied under the circumstances (see People v Judiz, 38 NY2d 529, 532 [1976]; see also Glen Oaks Vil. Owners, Inc. v City of New York, __NY3d__, 2025 NY Slip Op 03101 [2025]). The State policy regarding social services, generally, and rental assistance, specifically, is one of State and local collaboration, subject to State coordination. Moreover, while the Social Services Law and its accompanying regulations represent a comprehensive and detailed regulatory scheme, that scheme provides room for material local input (see Glen Oaks Vil. Owners, 2025 NY Slip Op 03101, *3-4). Indeed, the statutory [*7]law and regulations allow for proposed local supplementation of State mandated and approved rental assistance.
Lastly, the nature of the subject matter being regulated and the purpose and scope of the state legislative scheme do not suggest an intention to occupy the field of rental assistance; rather, the nature of the subject matter and the purpose and scope of the legislative scheme demonstrate that the Legislature and the State DSS wanted to foster local collaboration with the State, and to preserve and invite local problem-solving innovations. The result of State-local collaboration incorporating local proposals is State-approved rental assistance tailored to local needs, as opposed to statewide uniformity.
While the State DSS retains oversight of the administration of social services and the ultimate authority to set social services policy (including rental assistance policy), the Social Services Law and the implementing regulations allow for material local input in the formulation of rental assistance policy (see id.). Therefore, allowing for local legislation in this arena would neither inhibit the application of the State's laws nor thwart the implementation of the State's policy concerns. On the other hand, accepting the Mayor's contention that the State has occupied the entire field of rental assistance would undermine the State policy of allowing for local input into rental assistance policy and intrude upon the City's home-rule prerogative to have a say in matters pertaining to the health and well-being of its citizens.
In fact, the City Council has many times exercised its legislative power in the social services realm. From 1990 to 2014, it passed legislation regulating City DSS's use of housing shelters, including prohibiting City DSS from using Tier I shelters (see Local Law No. 18 [1990]; Local Law No. 6 [1999]; Local Law No. 43 [2002]; Local Law No. 62 [2014]). The Council's legislation has established subagencies within City DSS, including the Department of Homeless Services (see Local Law No. 57 [1998]), and has required City DSS to implement access to counsel for all New Yorkers facing eviction (see Local Law Nos. 53, 54 [2021]). Most recently, and most relevantly, its legislation has expanded eligibility for the City FHEPS program (see Local Law Nos. 71, 157, 170 [2021]; Local Law No. 64 [2023]).
Additionally, the FHEPS reform laws do not conflict, directly or indirectly, with State law. "[A] local law is conflict preempted only if it directly or expressly conflicts with state law" (Police Benevolent Assn., 40 NY3d at 426). The Mayor maintains that the City Council's efforts to legislate on the subject of rental assistance conflict with the Social Service Law because that law delegated to the City DSS the authority to make policy decisions regarding rental assistance. The Mayor's position in this regard rests on the following line of reasoning: the State, through 18 NYCRR 352.3, delegated to social services districts [*8]the right to submit proposals regarding shelter supplements to the Office; the City DSS (not the City Council) is the "social services district" for the City; as the social services district for the City, the City DSS alone possesses the right to propose a shelter supplement; and the FHEPS reform laws, which were passed by the City Council over the Mayor's veto, conflict with the State's delegation of authority to the City DSS. We disagree with the Mayor that the City DSS is the social services district for the City, and the failure of this starting premise dismantles his conflict preemption position.
The Legislature created two separate principal local actors in the realm of social services: social services districts and social services departments. The Legislature specified that a social services district is "responsible for the assistance and care of any person who resides in or is found within the district, and is in need of public assistance and care" (Social Services Law § 62[1]). The Legislature tasked the social services department with administering public assistance or care within the social services district (id. at §§ 2[17], 77). The Legislature identified "[t]he city of New York" as "a city social services district" (id. at § 61[1]), and declared that "[t]he city of New York shall have all the powers and duties of a social services district" (id. at § 56).
The Legislature could have defined "the city of New York" to have a particular meaning under the Social Services Law, but it did not. Giving that phrase its plain, commonly understood meaning, "the city of New York" is the City itself and all of its constituent parts, including the Mayor and the City Council (NY City Charter §§ 3, 21; see Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v New York City Dept. of Health and Mental Hygiene, 23 NY3d 681, 693-694 [2014]). The City itself, therefore, is the social services district, not the City DSS.
Moreover, reading "the city of New York" to mean the City itself preserves the distinction between "districts" on the one hand and "departments" on the other, and recognizes that those two entities have separate roles under the statutory scheme. The City itself, as the social services district, is responsible for the social service needs of the district's inhabitants, while the City DSS, as the social services department, is charged with the administration of the assistance and care to be provided. The Mayor's position — that the City DSS is both the social services district and its department — would eliminate the distinction made by the Legislature, an absurd construction that we must avoid. The Mayor's position would also result in a reorientation of the power to make policy judgments (and any corresponding budget judgments) from the City Council to the executive branch, a result we cannot endorse in the absence of a clear intention by the Legislature.
The City itself, as the social services district, has the right [*9]to propose shelter supplements under 18 NYCRR 352.3, and the City Council, as the legislative branch of city government, has the right to pass local laws crafting putative shelter supplements (that remain subject to implementation by the executive branch of City government, and review by State government). Thus, there is no conflict between the FHEPS reform laws and the Social Services Law and 18 NYCRR 352.3.
VI.
The Social Services Law and 18 NYCRR 352.3 created a dynamic legislative and regulatory environment in which the State and City governments have a symbiotic, though not equal, relationship relative to rental assistance. The Legislature has prescribed roles for both the City itself, including the City Council, and the City DSS ? roles that are constrained by State oversight. Because nothing in the Social Services Law or its implementing regulations preempted the City Council from passing the FHEPS reform laws, the order denying the CPLR article 78 petitions must be reversed, and the petitions granted to the extent of directing respondent to implement those laws.
Accordingly, the order of the Supreme Court, New York County (Lyle E. Frank, J.), entered August 6, 2024, which, to the extent appealed from, denied the petition seeking an order directing respondent Mayor Eric Adams to implement Local Law Nos. 99, 100, 101 and 102 (2023) and a declaration that the Local Laws are not preempted by New York State law, and dismissed the proceeding commenced pursuant to CPLR article 78, should be reversed, on the law, without costs, and the petition granted to the extent that respondent is directed to implement the Local Laws by making an appropriate submission or submissions to the New York State Office of Temporary and Disability Assistance, within the New York State Department of Family Assistance, for assessment under 18 NYCRR 352.3(a)(3)(ii).
Order, Supreme Court, New York County (Lyle E. Frank, J.), entered August 6, 2024, reversed, on the law, without costs, and the petition granted to the extent that respondent is directed to implement the Local Laws by making an appropriate submission or submissions to the New York State Office of Temporary and Disability Assistance, within the New York State Department of Family Assistance, for assessment under 18 NYCRR 352.3(a)(3)(ii).
Opinion by Higgitt, J. All concur.
Moulton, J.P., Gesmer, Mendez, Higgitt, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: July 10, 2025

Footnotes

Footnote 1: The Department was reorganized and renamed the Department of Family Assistance in 1997 (see L 1997, ch 436, part B, § 122[a]).

Footnote 2: While Social Services Law § 62(1) refers to "public welfare districts," such nomenclature is deemed to refer to "social services districts" (see L 1967, ch 728, § 5).

Footnote 3: These emergencies and the growing crises of housing instability are ably reviewed in the amici's brief.